NORTH ST. LOUIS GYMNASTIC SOCIETY (NORD ST. LOUIS TURNVEREIN) v. JAMES HAGERMAN, Jr., Collector of the City of St. Louis, Appellant.

Division One, February 28, 1911.

1. RES ADJUDICATA: Wrongful Decision. It matters not whether the former adjudication was right or wrong, it is conclusive between the parties in all subsequent proceedings if the same point is directly in issue and the doctrine of *res adjudicata* applies. Nor does it matter that subsequent decisions may have somewhat modified the former adjudication — as to the same parties and the same issues it is conclusive.

2. TAXATION: Exemption: Change in Constitution: Contract. A provision in the charter of a benevolent, charitable or educational corporation, granted by the General Assembly in 1864, exempting its properties from taxation so long as they are used for the charter purposes, valid under the Constitution in force at the date it was granted, is in the nature of a contract, and once granted cannot be withdrawn by a subsequent legislative act or Constitution.

3. RES ADJUDICATA: Tax Judgment. *Res adjudicata* applies to tax judgments the same as to other judgments. If the former adjudication held the property of a society to be exempt from taxation, that holding may be invoked as a bar to a subsequent suit for taxes, just as *res adjudicata* could be invoked in any other kind of suit.

4. ———: ———: Different Officers. The fact that the collector about to enforce the taxbill in the present suit was not the same collector who sought to enforce the taxbill against the same

society in the former suit, does not destroy the effect of the thing adjudicated then. In contemplation of law, he is the same officer.

5. ———: ———: **Different Use.** Where the identical claim of exemption from taxation, on the same property, under the same charter provision, was adjudicated in the former suit, that adjudication bars any further claim for taxes. Where it was then held that the renting of certain parts of the educational society's property for mercantile and saloon purposes, and the application of the rent money to society charter purposes, did not destroy the exemption, that will be the ruling again, although certain parts are no longer rented for stores, but a more profitable use is made of them as a hall and bowling alley, for there is no difference in principle in the use.

6. ———: ———: ———: **Refunding Subscriptions to Shareholders.** The mere fact that the educational corporation paid to some of its shareholders, by way of redeeming the stock they had subscribed for, the amount they had paid for it, does not destroy the exemption of its property from taxation, or destroy the identity of the thing in issue in the former case adjudging that its properties, under its charter, were not subject to taxation. That was merely allowing them to retire from the corporation, and under the agreed facts of this case, was somewhat in the nature of paying an indebtedness in the time and way set forth in the certificates; and whether or not such a payment was legal is not for decision in determining whether or not the corporation's properties are taxable.

Appeal from St. Louis City Circuit Court.—*Hon. Jas. E. Withrow,* Judge.

AFFIRMED.

*Johnson, Houts, Marlatt & Hawes* for appellant.

(1) An exemption from taxation "so long as property is used exclusively for educational purposes" does not apply where property is leased and rented to the public for hire. Fitterer v. Crawford, 157 Mo. 64; Adelphia Lodge v. Crawford, 157 Mo. 358; State ex rel. v. Macgurn, 187 Mo. 242; State ex rel. v. Johnston, 214 Mo. 668. (2) The question of the right of plaintiff to exemption of the property in question from taxation in 1906, is not rendered *res adjudicata* by the

decision of the case of North St. Louis Gymnastic Society v. Hudson, 85 Mo. 32. (a) The weight of authority and of reason is to the effect that an adjudication with respect to the validity of a tax for one year does not render the question of the validity of taxes for another year *res adjudicata;* it is against public policy to apply the estoppel of a judgment against the sovereign in the exercise of its taxing powers. Railroad v. People, 46 Mich. 193; Bank v. Memphis, 101 Tenn. 167; Adams v. Railroad, 77 Miss. 266; Davenport v. Railroad, 38 Iowa 640; State ex rel. v. Enloe, 121 Tenn. 378; City v. Commonwealth, 106 Ky. 447; Georgia R. & B. Co. v. Wright, 124 Ga. 606; State v. Sugar Refining Co., 108 La. 603. (b) The fact and circumstances as shown by the record in the two cases are so different that the judgment in the former case cannot be urged as an estoppel in the case at bar.

*Julius T. Muench* for respondent.

(1) The property affected by the taxes in controversy in this suit is exempt from taxation under the provisions of respondent's charter. Gymnastic Soc. v. Hudson, 85 Mo. 32; Same Case, 12 Mo. App. 342. (2) The question of the liability of the respondent company's property to taxation, under the terms of its charter, having been previously concluded by the judgment in the case of North St. Louis Gymnastic Society v. Hudson, 85 Mo. 32, under circumstances and conditions practically identical with those in the case at bar, the question of such taxability is *res adjudicata* as to the points involved in this case. Exposition Driving Park v. Kansas City, 174 Mo. 425; New Orleans v. Bank, 167 U. S. 371; Baldwin v. Maryland, 179 U. S. 220; Chouteau v. Gibson, 76 Mo. 47. (3) The facts and circumstances upon which the decision in the former case was based are, with the exception of some unimportant details, identical with those ex-

isting at the time the taxes in controversy in this suit were assessed, and the property is the same as that involved in the former adjudication.

LAMM, J.—Plaintiff sues in equity to remove the cloud on the title to certain of its real estate arising from a taxbill and a tax assessment for State, school and city taxes for the year 1906, and to cancel the taxbill and enjoin the collector from enforcing the same.

The bill runs on the theory, first, that under its charter its real estate is exempt from taxation; second, that the question is no longer open but is *res judicata*.

From a decree in plaintiff's favor, defendant comes up by appeal.

The pleadings are not challenged and we pass them by with the remark that they join issue on the questions of exemption and former adjudication, and are broad enough to make pertinent an agreed statement of facts on which the cause was submitted below. The substance of which is:

Plaintiff was incorporated under the name and style of *"Nord St. Louis Turnschule und Kinder Garten"* (followed by the legislative translation of "North St. Louis Gymnastic School and Infant Garden,)" by a special act of the General Assembly in 1864—at a time when special legislation was not unconstitutional. Its charter purpose was "educating children in gymnastics and the elementary branches of education." It had warrant of authority to hold and enjoy so much property, real, personal and mixed, as may be necessary to conduct its affairs. Section 3 of its charter authorizes its board of directors to employ, engage and discharge necessary professors, teachers, nurses, servants and agents, and to issue $50,000 in stock, each share for $25, but subscribers might take a fraction of a share. By section 4, the board was authorized to receive voluntary contributions from subscribers and

to charge a reasonable tuition fee. Section 5 reads: "Personal and real property of this institute shall be exempt from taxation as long as said property is used only for purposes of education; provided the value thereof does not exceed $50,000."

In 1874 its name was changed by an act of the General Assembly and made to read as it does now. In 1881, an attempt was made to tax its property, then amounting to $7610 in real estate and $500 in chattels. It then owned lots 7 and 8 and the west 8 feet of lot 9 in city block 1174 on Salisbury Street. The then collector of revenue, Hudson, having a tax-bill in hand and being about to enforce it, plaintiff sued in equity—the life of its bill being to enjoin collection on the ground its property was exempt by force of its charter terms. Answer was filed in that case and it was submitted (like this one) on an agreed statement of facts, which (omitting caption) reads:

"The facts in this case, for the purposes of a judicial determination, are agreed to be (in addition to the documentary evidence, viz., taxbill and charters of plaintiff, herewith also submitted):

"That plaintiff is the owner of the real and personal property described in said taxbill; that it carries on a gymnastic school as averred in the petition; that the personal property by it owned is devoted wholly to the conduct and purposes of such school; that upon the real estate described in the petition, plaintiff erected a two-story brick building, paying for about one-half thereof out of sums realized on shares of stock issued pursuant to its charter, as also some other means, and the other half then remaining as a debt of said society; that the entire second floor, and a large part of the first floor of said building are used and occupied in the conduct of said school, and that two corner rooms on said first floor are let by plaintiff at a monthly rental paid to it; one of said rooms for a saloon and the other for a store; which

said monthly rental so received is used by plaintiff in defraying the legitimate expenses of conducting said school, paying salary of teachers (so far as the same are not met by voluntary contributions of members); in keeping said building in repair; and in discharging the remaining indebtedness of plaintiff, incurred in building as aforesaid.

"That plaintiff has not devoted any money received by it to any purpose other than above designated. That the taxbill in question has been demanded as in the petition alleged.

"The above facts are to be considered by the court subject to defendant's objection that under the allegations of the petition, plaintiff is not entitled to any relief in the premises; in other words, that the petition does not state a cause of action and no testimony can be received to support it."

In that case a decree went for plaintiff in the circuit court. Defendant appealed to the St. Louis Court of Appeals, where the decree was affirmed (12 Mo. App. 342). Under the then practice, an appeal was taken to this court, and the decree was finally affirmed (85 Mo. 32). Such was the end of the first suit. (*Nota bene*: While the agreed statement of facts in the case at bar does not directly say so, yet the briefs proceed on the theory, and read between the lines the statement means, we think, that plaintiff acquired property and organized its school at once on its corporate birth in 1864; that no attempt to tax its property was made before 1881, and that after the first suit was determined in its favor no further attempt was made until in 1905-6. The case may also proceed on the theory that only a part of the capital stock was taken and that the original buildings and the new gymnasium were largely constructed by interest-bearing loans.) In 1905, plaintiff still owned the Salisbury lots, but at some time during the quarter of a century between the first attempt to tax and the

last, it acquired lots 5 and 6 in the same city block
on Mallinckrodt Street. These two properties were
adjacent, but separated by an alley. At some time after
the purchase of the Mallinckrodt lots, plaintiff erected
a gymnasium on the latter and connected the same
with the old buildings on the Salisbury lots by a cov-
ered passage over the alley—making all its buildings
usable as one. It is agreed that no part of the Mal-
linckrodt property was income-producing or was rent-
ed out, but the whole thereof was used by plaintiff for
charter purposes. Defendant has no taxbill against
the new property, nor were any taxes imposed thereon.
However, in 1905, an assessment was made and taxes
imposed against the Salisbury lots, to come due in
1906, and the taxbill is in the hands of defendant,
*ex officio,* he is about to enforce it and will do so un-
less restrained by legal process. At this point (be-
cause of a contention raised) it may be well to repro-
duce more of the agreed statement of facts *in haec
verba, viz.*:

"On June 1, 1905, and for a long time prior there-
to, the buildings on lots 7 and 8 and the western eight
feet of lot 9, in city block 1174, consisted of a
group of buildings, partly two-story and basement,
and partly three stories in height. The saloon on the
ground floor at the corner, with the living rooms ad-
joining it, were rented to a man, for the sum of fifty
dollars per month, whose duty it was, as part of the
consideration for his occupancy of the premises, to
keep all parts of the plaintiff association's premises
in proper order and to hire all help necessary for this
purpose; the other room on the first floor of the prin-
cipal building at the corner was occupied by the plain-
tiff association as a club or assembly room, and the
second floor of the principal corner building consisted
of a large entertainment hall, with stage, dressing
rooms, bar and retiring rooms adjoining, used by the
society for the purpose of lectures to its members, in

accordance with the objects for which it was formed, for giving gymnastic exhibitions, for public contests in declamation and for musical, dramatic and other entertainments by its members.    This hall, with the rooms adjacent, was on occasions rented out to clubs or other social organizations for dances, fairs, banquets and other entertainments for hire, and a considerable income received therefrom; the basement of the main building contained a bowling alley, and the first floor of the three-story part of the original group of buildings on lots 7 and 8 and the western eight feet of lot 9 billiard and pool tables, used by the members of the society and by auxiliary clubs and societies closely allied with the society, who paid a regular rental for their use; the third floor of this three-story part of the main building was occupied by a dining hall and kitchen, used in connection with entertainments given by the members of plaintiff association and also, like the large hall, rented to others for hire; the second floor of the three-story part of the main building was occupied by the retiring rooms and bar adjacent to the large entertainment hall hereinbefore referred to.''

It was further agreed that the rent from ''Entertainment hall, including the saloon and living rooms'' in the year preceding March 31, 1905, was $4,915.36; from the ''banquet hall'' on the third floor, $201.88; from the bowling alley in the basement, $147.90; and that an income at that rate was coming in on June 1, 1905, . Outside of the saloon and adjoining living rooms in the Salisbury property, no part of the buildings thereon was arranged for mercantile purposes.    To the contrary, it was arranged and used only for purposes incident to the objects of a club or social organization.    In fact, the rooms occupied by stores in 1881 were no longer so used on June 1, 1905, and no part of the premises were rented out other than for ''dances, entertainments, fairs, public lectures, banquets, and

similar undertakings of an educational or social nature.'' The charter provisions pertinent remained the same in 1905 as in 1881. Plaintiff was still conducting a gymnasium and school with a large number of pupils and maintained an instructor to teach them and a department devoted to the mental training of its members and their children. It was further agreed that the conduct of such gymnasium, and school of mental training, was the principal object of the association. No dividends on the stock had ever been paid and under the terms of the subscription none could be paid. Further, that all the moneys received from all sources whatever have been applied to the ''erection, alteration and repairs of its buildings, the purchase of equipments, the payment of salaries of its instructors, the payment of money borrowed, and other expenses necessary in the maintenance of the institution.'' From its start to June, 1905 (say, in 45 years), $10,000 has been repaid to subscribers out of plaintiff's income. This was paid to shareholders on account of what they had paid in for stock. We infer such payments were in the way of redeeming stock— each certificate reading, *inter alia*: '' . . . and *payable to the holder at such time and such sums as the board of directors of the society may order and declare.''*—no stockholder had ever received more than the face of his share. It was further agreed that the tuition of pupils and the voluntary dues of members were ''wholly inadequate for the purpose of erecting the buildings occupied by the association or paying interest on the outside capital invested therein and supplying the association with proper equipment and appliances and paying the salaries of instructors and other expenses of maintenance of the building, lighting and heating the same and expenses incidental to the object for which the association was formed.'' Plaintiff's property on the first day of June, 1905, did not exceed $50,000 in value. The outside capital

borrowed at the outset and the debt therefor existing at the time of the first suit does not appear further than relatively, viz., one-half of the cost. The amount of the loan at the time of the second suit was $11,000. As we gather, it had been reduced to that amount by the payment of $2500 the year preceding.

On the foregoing record, learned counsel for plaintiff plants himself on two propositions: *First.* The property is exempt by virtue of the charter. *Second.* The question of exemption is not an open one, but by virtue of the former suit and judgment it passed into a matter adjudicated. *Contra,* learned counsel for defendant plant themselves on, *first,* the proposition that the doctrine of *transit in rem judicatam* on principle does not apply to tax judgments, and, *second,* if it be held to apply, then in strict fact there has been a material change in conditions which takes this case out of the rule; and third, that under its charter plaintiff's Salisbury store lots are not exempt.

Such are the propositions of fact and law held in judgment.

Our conclusion is the judgment must be affirmed. This, because:

(a). As pointed out, in the evolution of their argument counsel present the question whether under its charter and the facts of this record plaintiff's property is exempt from taxation. Plaintiff's affirm, defendant's deny. But that question merges itself into the larger one of *res judicata.* If the first adjudication rises to the mark of *res judicata,* and the doctrine of *res judicata* applies to the judgment, we need not consider whether the decision was right or wrong; for right or wrong, it abides and must be given force and effect in any case between the same parties where the very thing adjudged is again in issue. Assuming *res judicata* applicable in full vigor, its potency is remarkable. It, in effect, makes of white, black; of black, white; of the crooked, straight; of the straight, crooked.

Says Bouvier (1 Bouv., Inst., sec. 840), "For it is a maxim that *res judicata,* or the decision of a legal or equitable issue by a competent jurisdiction is a complete bar to any future action: *res judicata facit ex albo nigrum, ex nigro album, ex curvo rectum, ex recto curvum.*" The judgment is not conclusive as to matters only collaterally in question, but when pleaded in bar or introduced as evidence is conclusive between the parties if the same point is directly in issue. [Baumhoff v. Railroad, 205 Mo. l. c. 262, *et seq.*] Because of a disposition to be made of the larger question suggested, we need not pursue the matter. We leave it with some observations, viz.:

The doctrine of North St. Louis Gymnastic Society v. Hudson, 85 Mo. 32 (the case affirming the first judgment), may have been modified by our later decisions. It was ruled in that case that renting a part of the premises to produce an income, so long as the income was used for the purpose of education, left the property of this plaintiff still exempt from taxation under its charter provision, exempting its property "so long as it is used only for the purposes of education." In the light of our recent decisions, we might not rule that question the same way at this day. Witness: Fitterer v. Crawford, 157 Mo. 51; Adelphia Lodge v. Crawford, 157 Mo. 356; State ex rel. v. Macgurn, 187 Mo. 238; State ex rel. v. Johnston, 214 Mo. l. c. 668, and cases cited. Doubtless, the question as shown by the reasoning in those later cases may be somewhat controlled by whether there has been such *bouleversement* that the principal thing and incidental thing have swapped places—whether the incidental use has swollen into the principal use and the charter purpose has in turn dwindled to a mere incident. But for the purposes of this case we need pursue the matter no further.

It is settled law that a provision in a charter of a benevolent, charitable or educational corporation

exempting its property from taxation so long as it is used for the charter purposes, under the Constitution in force at the date of plaintiff's charter, is in the nature of a contract. It is not a mere license or gratuity that, once granted, may be withdrawn by another legislature or by another constitution-maker, but is a contract based on the consideration of benefit to the public. [The President and Faculty of St. Vincent's College v. Schaefer, Collector, 104 Mo. 261, and cases cited.] But before the case could be allowed to break on the foregoing proposition, we would still have to consider whether the use to which plaintiff's property is put is within the charter purpose—in other words, whether it is being used "only for purposes of education." As said before, that question need not be considered until we have disposed of the issue of *res judicata*. To that question we pass.

(b). Of *res judicata.*

The question, as presented here, divides itself into two. First. Does the doctrine of the thing adjudged apply to tax judgments? Second. If so, was the thing adjudged in the first suit the same thing to be adjudged in the second suit?

1. Defendant's counsel cite us to a line of cases elsewhere, holding that *res judicata* does not apply to tax judgments. The supporting reason for those cases is that the exercise of the right to tax belongs to sovereignty, and that estoppel does not lie against a sovereign. If the question were new, it would be an inviting field of exploration. It would be profitable to consider it right well before adopting it or the contrary theory, but it is in no way new in this jurisdiction.

In Kansas City Exposition Driving Park v. Kansas City, 174 Mo. 425, the question in all its bearings was elaborately considered on both precedent and principle and our learned brother GANTT reviewed nearly all the cases now relied on by defendant. In that case

the circuit court of Jackson county, holding in judgment a charter and a leasehold and use made of the latter by plaintiff, had theretofore in another suit adjudged the property of the Exposition Driving Park exempt from taxation, and *res judicata* was plead. That case is of strictly peculiar significance in this case. Plaintiff's charter purpose was to encourage and promote agriculture and improvement of stock. It had authority to establish fair grounds and claimed to be an agricultural and horticultural society within the purview of laws exempting the property of such societies from taxation. That particular plaintiff at one time established and held a fair, but such bucolic features as horticultural and agricultural displays finally disappeared from its corporate program, and at the time its business was horseracing. It did not run horses itself but, for a price certain, it let its property to parties who managed the races and enjoyed the peculiar gains of that business as once conducted. In the opinion of this court it was not an agricultural or horticultural society as contemplated by the constitutional grant of tax exemption. The circuit court, however, having found for plaintiff in a former suit, that judgment was pleaded in a new suit for the taxes of another year. The defense was allowed. We had no difficulty in coming to the conclusion that the original case was erroneously decided by the circuit court. But constrained by the doctrine of *res judicata,* we (as did the court below) applied it in the last tax suit between the same parties where recovery was sought for the taxes of another year and where the right to exemption was again in issue on the same conditions. That case is based on the authority of the Supreme Court of the United States in New Orleans v. Citizens' Bank, 167 U. S. 371, and cases following that, and other well considered cases. To our minds the matter was so exhaustively considered and so soundly rea-

soned in the Exposition Driving Park Case that no judicial excuse exists for a re-examination of its doctrine. On that authority, we rule that *res judicata* applies to tax judgments as to others.

2.    There remains the other division of the question, viz., whether the facts, the parties and the issue in the present suit are the same as they were in the 1881 case. In contemplation of law the parties are the same. In New Orleans v. Citizens' Bank, supra, the contention was made that *res judicata* did not apply because the officers about to enforce the tax were not the same officers charged with that duty in the former case. But the court brushed that contention aside. It held that the tax collectors and board of assessors, who stood in judgment in the suit when the first decisions were rendered, were duly qualified and empowered to that end and the successors to those officers, defendants now, also were duly empowered. "The mere fact that there has been a change in the person holding the office does not destroy the effect of the thing adjudged." [Pp. 388-9.] It is familiar doctrine that privies are bound. The identical claim of exemption, on the same property, under the same charter provision is here now that was here when plaintiff sued Hudson, collector (85 Mo. 32). In that case parts of the property were rented out for mercantile and saloon purposes. The collector claimed then, and the collector claims now, that such use of the property took it out of the exemption. The circuit court, the court of appeals and this court adjudged such use of the property did not defeat the exemption so long as the income of such use went alone to the principal corporate purpose. In this case, it is true, parts of the building are no longer rented for stores. It is also true that a more profitable use is made of a certain hall in the old building than was made at the time of the first suit, and that there is a bowling alley in the basement from which a small income is derived. But there is no dif-

ference in principle in the use. The identical thing adjudged in the former case was that such use of the property was not effective to destroy the exemption. Plaintiff was entitled to act on that construction of the charter and govern itself accordingly. Having acted in accordance with the adjudged construction, it would be tolling plaintiff into a pit, or into a gin to be caught by the heel, to permit the taxing authority to now take advantage of a situation resulting from the former judgment.

The mere fact that in the course of its existence the corporate plaintiff paid to some of its shareholders, by way of redeeming their stock, the amount they had paid for it, so long as no interest or profits inured to the stockholders paid off, was merely in the nature of allowing them to retire from the corporation; and, considering the form of the stock certificates issued, such transaction was somewhat in the nature of paying an indebtedness in the time and way set forth in the certificates, viz., at the will of the directors. Whether what was done was legally done in that behalf, is a question not for decision. We see no facts in the present case destroying the indentity of the thing adjudged in the former case. In that case the tax exemption was sustained and whether the case was well or poorly decided, it became a proposition settled so long as plaintiff's property does not exceed $50,000 and so long as its entire income is devoted to keeping up its establishment, maintaining its gymnasium school with its incidental purposes without financial profit and gain by way of dividends to its shareholders. [New Orleans v. Citizens' Bank, supra; Baldwin v. Maryland, 179 U. S. 220; Kansas City Exposition Driving Park v. Kansas City, supra.]

The judgment is affirmed. All concur, except *Valliant, J.,* who is absent.