FRANK KELLEY, RESPONDENT, v. CITY OF CAPE GIRARDEAU, APPELLANT.—72 S. W. (2d) 880.

Springfield Court of Appeals. June 18, 1934.

*Frank A. Lowry* for appellant.

*Dearmont, Spradling & Dalton* and *Frank Kelley* for respondent.

BAILEY, J.—Action for damages to plaintiff's residence property located in the City of Cape Girardeau as a result of being flooded by surface water. The condition of defendant's street and storm sewer in front of plaintiff's property, whereby surface water is permitted to collect and flood plaintiff's said property in times of rain storms, has given rise to an unusual amount of litigation and the end is not yet in sight. This is the fourth appeal to reach the appellate courts in different suits arising out of the same situation. The first two appeals were decided by the St. Louis Court of Appeals. [See Kelly v. Cape Girardeau, 260 S. W. 801, 284 S. W. 521.] The third appeal was to this court. [See Kelly v. Cape Girardeau, 60 S. W. (2d) 84.] It would seem that every issue that might arise in regard to this controversy should have been determined and have become *res adjudicata,* so that only the question of damages in each case would remain. [Paddock v. Somes, 102 Mo. 226, 14 S. W. 746.]

We attempted to settle the issue (again raised in this case) in regard to splitting causes of action, on the last appeal to this court, but plaintiff never became reconciled to that decision and the same question arose at the trial of the present suit. One of plaintiff's first suits resulted in a mandatory injunction against the City of Cape Girardeau, requiring the city to provide adequate storm sewers

to take care of the surface waters caused to be collected and overflow plaintiff's property. The city apparently attempted to comply with the terms of this injunction, but the additional outlets provided proved entirely inadequate to take care of the drainage situation. [See Kelly v. Cape Girardeau, 260 S. W. 801, supra.]

The failure of the court to enforce this injunction against the city or its officers and the refusal of the city, whether justified or not, to provide an adequate storm sewer at the place in question, has given rise to the numerous suits mentioned and not only actual but punitive damages have been assessed at various times against the city. There can be no doubt that such suits will likely continue until something is done about the matter. What should be done is not for this court to say. The fact that plaintiff has been put to great inconvenience and annoyance and suffered damage from time to time as the result of his property being flooded, is a question long settled. So also are settled the questions of defendant's liability for the damages and that plaintiff is entitled to bring a new suit for recurring damages each time his property is flooded. The principal question on this appeal, as on the former one to this court, is whether or not plaintiff is barred from recovering damages for any rainfalls that had occurred prior to the date he instituted the last suit against the city. To this question we shall again devote our attention.

The present suit was instituted in the Cape Girardeau Court of Common Pleas on the 3rd day of June, 1932, but was transferred to Scott County on change of venue. It is a suit for damages claimed to have been sustained by plaintiff as a result of his property having been flooded at different dates by reason of surface water from rains. The petition is in nine counts each for a different rain occurring on the following dates: June 8, 1928; June 17, 1928; June 20, 1928; June 24, 1928; June 28, 1928; April 21, 1929; May 13, 1929; August 3, 1931; and August 27, 1931. It appears from the pleadings that plaintiff filed a suit on the 2nd day of April, 1931, for damages to his said property from overflows at various dates prior to that time, and that those matters went to judgment in plaintiff's favor. None of the damages claimed in the present action were included in the 1931 suit, although it will be observed that all the overflows for which damages are not sought, except the last two, had occurred prior to the time said suit was filed in 1931. Defendant pleaded that all the counts in plaintiff's petition for damages which had accrued at the time the suit was filed in 1931 were barred by the judgment in that suit. As heretofore noted, the trial court failed to sustain that contention although this court had the identical question before it in the prior appeal and decided the plea in bar should be upheld. [Kelly v. Cape Girardeau, 60 S. W. (2d) 84, supra.]

Plaintiff has most courteously requested that we re-examine the question and most strenuously and forcefully argues that our opinion in the former appeal was erroneous. It is urged that plaintiff's

petition in this case, which is similar in every respect to the petitions filed in the other cases that have come before the appellate courts, is bottomed upon the theory of maintaining a nuisance and not upon the theory of negligence on the part of the defendant city in constructing its streets and storm sewers at the place in question; that therefore each and every rainfall, by which plaintiff's property was damaged, gave rise to a separate and distinct cause of action wholly unaffected by any judgment in any prior suit for damages resulting from the maintenance of said nuisance; that per force, plaintiff had the right to sue on any one or all the claims at any time, unless barred by the Statute of Limitations, irrespective of any other suit or judgment.

In the former appeal to this court (Kelly v. Cape Girardeau, supra), we held that the maintenance of the insufficient storm sewer was a continuous tortious act which gave rise to successive causes of action each time plaintiff was damaged by reason of the flooding of his premises, but that he was bound to sue for all damages that had accrued up to the time the suit was brought if he desired to claim such damages. However, we recognized the rule, long established, that in the case of a continuing nuisance it is construed to be a fresh nuisance every day it is suffered to remain and that a new action may be brought for any damages sustained from day to day. [Pinney v. Berry, 61 Mo. 359; Dickson v. Railroad, 71 Mo. 575.]

In holding that plaintiff was barred from maintaining any action for damages to his property which had occurred prior to the time of filing the 1927 suit and not included therein, we followed the rule laid down in the case of Steiglider v. Missouri Pacific Ry. Co., 38 Mo. App. 511; Bird v. Railroad, 30 Mo. App. 365, and other cases. In the latter case it was held that where the plaintiff sued for injury to his crops and lands from overflows through a period of several years and included all the damages claimed for the different years in one count of his petition, he was not bound to elect upon which cause of action he would stand. On this point the St. Louis Court of Appeals said:

"If the structure causing the overflow was a continuing nuisance, the plaintiff might have brought action upon it from day to day, or else he might have waited until he suffered a series of injuries and then sought redress for them in one action. The injuries were essential to enable the plaintiff to recover substantial damages, and affected only the *quantum* of his damages, but his cause of action was the erection of the nuisance. He might have sued for each temporary injury resulting to him therefrom, but was not bound to bring an action for each temporary injury as soon as the same occurred. There can be no warrant for fixing arbitrarily the plaintiff's causes of action as severable into yearly periods. Many overflows may occur from the same cause in one year, and none in another.

Neither the pleadings in this case, nor even the evidence, show that there was one overflow in each year, and that such overflow gave to the plaintiffs a distinct cause of action. We must, therefore, reach the conclusion that the court did not err in overruling the plaintiffs' motion to elect." [l. c. 374.]

In commenting on this decision the Kansas City Court of Appeals, in the case of Bunten v. Ry. Company, 50 Mo. App. 414, used the following language: "The petition in this cause is based on the successive destruction of plaintiff's growing crops in the month of June for the years 1883, 1884 and 1885, and for permanent injury to the land, and that there is but one count with the damages laid in a gross sum. Defendant contended below that the destruction of the crop in each year made a separate cause of action which, if united in the same petition, should be separately stated in separate counts. This point was made in the proper manner, but was overruled. The ruling was erroneous as was decided in Offield v. Railroad, 22 Mo. App. 607. Each destruction of a crop resulted in damages which must be brought separately (VanHoozier v. Railroad, 70 Mo. 145), or, if united in one action, it must be counted on separately. We thought this position to be quite clear until we found it questioned in Bird v. Railroad, 30 Mo. App. 374. That criticism perhaps accounts for the ruling of the trial court in this case. But it is not well grounded. If it be conceded that the cause of action is the erection of the nuisance, in a case where the erection is on one's own property, and not of itself an invasion of another's right, yet the nuisance is considered as being newly erected at the time the injury happens. The action in such a case is never bottomed on the old or original erection,—for such original erection may be barred by limitation, but on its being maintained and continued at the time of the injury which, in theory of law, is a new erection or fresh nuisance. [Gould on Waters, sec. 412; Wood on Nuisances, sec. 865; K. P. Ry. Co. v. Mihlman, 17 Kan. 228." l. c. 421.]

We are of the opinion that the statement of the law in the latter case is correct. Of course, where the damage is continuous with the wrong, and not susceptible of apportionment or division, but one cause of action exists which may be properly stated in one count. [Darby v. M., K. & T. Ry. Co., 156 Mo. 391, 57 S. W. 550.]

That rule was adhered to in the recent case of Shelly v. Ozark Pipe Line Company, 37 S. W. (2d) 518, 327 Mo. 238. The rule is stated in 34 C. J. 843, as follows: "So a judgment in a former action against a railroad company or other corporation for damages to real property caused by the construction of its road or other words, sustained up to the time of bringing the suit, is not a bar to an action for such damages accruing subsequently, nor will a recovery for injury to a growing crop from such cause bar a subsequent action for injury to another crop, although the damage to the second crop had accrued at the time the first action was tried."

In the case at bar each rain complained of was separate and distinct and it has been decided that the nuisance was an abatable one. While it was a continuous tort, the nuisance is to be considered as having been recreated on each occasion damage was inflicted upon plaintiff's property by reason thereof and plaintiff therefore had a separate cause of action for each rainfall. It follows that there could logically be no splitting of plaintiff's cause of action under such circumstances. It is with some reluctance we overrule our former opinion on this question. Our reluctance is occasioned, not because of pride in our former opinion, for courts should correct their own errors when convinced thereof as readily as those of other courts over which they may have control (Bowels v. Troll, 262 Mo. l. c. 380), but because we deem our former ruling more equitable and just in preventing multiplicity of suits. Our courts have created the fiction that the nuisance becomes a new and fresh one each time damage occurs, no matter how long it may have existed. This rule was occasioned no doubt from the necessity of providing a proper period of limitation for each separate damage and prevent recurring damage from relating back to the original wrong, as is true in the case of a permanent nuisance. This rule permits the owner of the property damaged to bring a separate suit for each flooding of his property at any time within the period of limitation, although it is entirely possible that his property might be twice flooded within a period of twenty-four hours. So in the case at bar, it will be observed, that five of the floods were within one month and three within one week, during the month of June, 1928. But having once adopted the theory that each separate flood gives rise to a separate cause of action wholly independent of any other suit or judgment, there can be no splitting of the cause of action and we know of no rule which will compel plaintiff to bring forth all his claims for damages in one suit, however, desirable that might be under the circumstances here shown. We therefore hold that the judgment in the former suit was not a bar to any count of plaintiff's petition in the present suit. In doing so we are in conflict with other decisions heretofore noted.

It is urged that the trial court erred in permitting the pleadings and instructions of former suits to be introduced in evidence. The petition pleaded the former judgments and also certain issues alleged to be *res adjudicata*. When the pleadings, instructions, etc., of the former suits were offered in evidence no objection was made by defendant except as to the reading of the amount of the verdicts of the juries in said former suits. The trial court sustained defendant's objections to the reading of the amounts of the verdicts although it appears that the amounts were read to the jury in some instances without objection. We therefore find no merit in this assignment.

Error is assigned because the trial court did not confine plaintiff's witnesses in their testimony to the condition of plaintiff's property to floods on the specific dates mentioned in the petition. Particular attention is called to the testimony of one Martin Neidling on this point. An examination of the record shows that this witness was asked if he remember the general conditions there in times of heavy rains between the 8th day of June, 1928, and August 27, 1931. These dates were the dates set forth in the petition. The witness testified as to general conditions following heavy rains between those dates and was therefore reasonably within the allegations of the petition. We find no error in this respect.

In the original petition filed in this case plaintiff prayed for punitive damages. The trial court permitted plaintiff to amend his petition by inserting the words "And for failure to comply with the order of the court," in each count of said petition. This is assigned as error. It is our opinion the amendment did not change the cause of action but was in harmony with the prayer for punitive damages and was a matter lying within the sound discretion of the trial court. [Montague v. Missouri & K. Interurban Ry. Co., 289 Mo. 288, 233 S. W. 189.]

We are of the further opinion that the petition in this case, setting forth, as it does, the various other petitions, instructions, verdicts and judgments, including the suit for mandatory injunction heretofore referred to, and the alleged failure of defendant to comply with the terms of said injunction through a long period of years, stated facts sufficient to permit the recovery of exemplary damages. [Krebs v. Construction Co., 144 Mo. App. 649, 129 S. W. 425; Lampert v. Drug Co., 233 Mo. 409, l. c. 419, 141 S. W. 1095.]

Error was assigned in the giving of an instruction submitting the question of exemplary damages for the reason that the petition and proof did not authorize the assessment of punitive damages. We find no merit in that contention. The court long ago decided that the nuisance complained of was an abatable one. Whether or not that decision was correct is no longer a question for this court. The fact remains that the city has persistently failed and refused to correct the condition giving rise to these numerous suits, although the decree of the circuit court commanding the city to do so, which was pleaded, has been confronting the officials of the city for many years. The proof in this case of such state of facts would, under the authorities cited, justify the submission of the question of punitive damages.

The only remaining question of any importance relates to the question of whether or not the punitive damages assessed by the jury were excessive. It will be recalled that the petition in this case was in nine counts each representing a different rainfall occurring respectively on the following dates: June 8, 17, 20, 24, 28, 1928; April 21, 1929; May 13, 1929; August 3 and 27, 1931. The jury awarded actual damages in the sum of $20 and punitive damages

in the sum of $135 on each count of the petition, making a total of $180 actual damages and $1215 punitive damages. It is our opinion that the assessment of punitive damages in so large an amount for all the rains occurring so close together in June, 1928, was unreasonable. It is obvious that defendant city could have done little to have remedied the situation during the few days intervening between the 8th and 28th day of June, during which period five unusual rains occurred. We therefore consider the punitive damages assessed on the 2nd, 3rd, 4th and 5th counts, excessive in the sum of $75 on each of said counts, or a total of $300.

Finding no material error in the trial of the case except as to punitive damages, the judgment should be affirmed upon condition that plaintiff, within ten days, shall remit three hundred dollars as above set forth, but on failure to do so the judgment will be reversed and remanded. It is so ordered.

We consider our conclusions on the question of the plea in bar as in conflict with the decision of the St. Louis Court of Appeals in the case of Bird v. Railroad, 30 Mo. App. 365, and with the Kansas City Court of Appeals in the case of Steiglider v. Missouri Pacific Ry., 38 Mo. App. 511. The cause is for that reason certified to the Supreme Court. *Allen, P. J.*, and *Smith, J.*, concur.