FRANK KELLY, APPELLANT, v. CITY OF CAPE GIRARDEAU, ED. L. DRUM, FRANK BATCHELOR, PAUL BROOKS AND HARRY COFFMAN, RESPONDENTS.—89 S. W. (2d) 693.

St. Louis Court of Appeals. Opinion filed Jan. 7, 1936.

Motion for rehearing overruled Jan. 24, 1936.

138

*Dearmont, Spradling & Dalton* and *Frank Kelly* for appellant.

*Frank Lowry* for respondent.

BENNICK, C.—This appeal comes in the course of a long controversy between plaintiff, Frank Kelly, and the defendant City of Cape Girardeau and its officers over the question of the abatement of a private nuisance heretofore adjudged to exist by reason of the inadequacy of the drains and outlets installed by the city to carry away the surface water which accumulates from time to time in the immediate vicinity of plaintiff's property.

It was in 1919 that plaintiff brought his original suit in the Cape Girardeau Court of Common Pleas against the city and its officers to have a nuisance declared to exist and the same ordered abated; and on May 28, 1920, after a hearing upon the issues joined, the court entered its judgment in the case, the material portion of which was as follows:

"The court finds that by reason of the grading and paving of the streets mentioned in plaintiff's petition, and by reason of the construction of sidewalks, curbings, and gutters on the streets mentioned in the petition, the water has been collected in front and on plaintiff's property and has been obstructed and prevented from flowing therefrom creating a nuisance.

"WHEREUPON, it is by the court ordered, adjudged, and decreed that defendants be and they are hereby required and commanded to forthwith abate such nuisance, and to provide larger outlets for such water, or that such water be diverted from gathering in quantities in front of and on plaintiff's premises. . . . ."

No appeal was taken from such judgment, and it would appear that the city subsequently but unavailingly attempted to remedy the situation complained of by plaintiff by the installation of an additional eighteen-inch sewer pipe to assist in carrying away such water as might gather and overflow in the street. However, when the new improvement failed largely to achieve its purpose because of an insufficient outlet for the drainage, plaintiff began the institution of repeated actions against the city, with each action usually embracing several counts, by all of which he sought to hold the city liable for the damages alleged to have been suffered by him in each instance on account of the particular overflows involved. More often plaintiff prevailed, though in some instances the decision went against him, and four of those cases have already found their way into the appellate reports of this State, the citations being at 260 S. W. 801; 284 S. W. 521; 227 Mo. App. 730, 60 S. W. (2d) 84; and 228 Mo. App. 865, 72 S. W. (2d) 880.

Nothing adjudicated in those damage suits is in anywise determinative of the issues involved in this proceeding, and they may now be said to be of importance only in so far as they tend to evidence the continuous nature of the litigation ensuing between plaintiff and the city which ultimately induced plaintiff to institute the present suit on May 10, 1930.

In his petition herein he set up the filing of the original suit, and the entry of the judgment which has been heretofore quoted; he referred to the large number of damage suits which he had theretofore instituted against the city from time to time as particular causes of action accrued; and he alleged that all of such litigation had cost him much time and money, and would continue to be a great source of expense and annoyance to him if he were to continue to be relegated for all relief to that form of procedure.

Upon the theory that inasmuch as the judgment entered in the original suit had established his right to a correction of the conditions complained of by him and had adjudged that the nuisance found to exist should be abated, he alleged that he ought not be compelled to continue to litigate his rights with the city; and he asked the court that the defendants, both the city and its officers, be cited before the court to show cause, if any they had, why the said judgment had not been complied with, and why they should not be punished for contempt of court if further delay was had in complying therewith if the court should order them to comply therewith and they should fail, refuse, and neglect to do so.

His final prayer was that the power of the court be exerted in his behalf; that respect for the obedience of the court's decree be secured; that defendants be at once ordered to take steps and action to abate the nuisance and to comply with the court's decree; and that in the event the court should order defendants to comply with the decree, they be then served with a copy of the same, together with the court's order in the premises herein.

For one reason or another the cause was continued from term to term for a period of more than four years until December 20, 1934, when the court sustained defendants' demurrer to plaintiff's petition, but without assigning the ground or grounds upon which its order was based. Plaintiff refused to plead further, whereupon the court caused final judgment to be entered in the matter; and his appeal to this court has followed in the usual course.

The question of the sufficiency of the petition as against attack upon it by demurrer is somewhat complicated at the outset of the case by lack of agreement between the parties regarding the purpose of the suit and the nature of the relief sought, that is, as to whether the proceeding is one for contempt of court arising out of the fact of defendants' alleged disobedience to the decree of the court adjudging

a nuisance to exist and ordering that it be abated. Plaintiff disclaims any such intention, insisting rather that it is his purpose merely to have the now incumbent city officials, who are the individual defendants to this suit, directed and commanded by the court to comply with its decree previously rendered requiring the nuisance to be abated; and that short of such an order specifically extending the mandatory force of the decree to the present officials, a contempt proceeding could not lie against them based upon their noncompliance with it. Defendants argue on the other hand that if the suit is to serve any legitimate purpose whatsoever, it is to be regarded as a contempt proceeding despite all of plaintiff's disclaimers to the contrary; that the entry of the original decree carried along with it the requirement for compliance with its terms without the necessity for any subsequent readjudication by the court of the question of whether the city and its officials were to be bound by it; and that in a proceeding confessedly designed to seek the aid of the court because of the fact of noncompliance with a mandatory injunction by those whose duty it is to carry out the court's decree, the only relief known and recognized by the law would be by way of punishment for contempt of court.

We think that defendants are clearly right in their interpretation of plaintiff's petition. While it is of course true that the original decree was directed primarily to the parties who were designated as defendants to that suit, yet so far as such individual defendants were concerned it was addressed to them purely in their official capacities as officers of the defendant city, and whatever was required by the decree to be done was required of them only in the discharge of their public duties. Furthermore, it is an elementary principle that privies are equally bound in respect to the subject matter of the litigation with the particular parties as to whom a judgment specifically goes; and therefore, since successors in public office are in privity with their predecessors as to official matters, it must follow that the subsequent changes occurring in the identity of the officers of defendant city did not in anywise destroy the conclusive effect of the matter theretofore adjudicated by the court so as to require that it be thereafter readjudicated as to the succeeding officeholders. [North St. Louis Gymnastic Society v. Hagerman, 232 Mo. 693, 135 S. W. 42; 34 C. J. 1031.]

Quite necessarily the power of the court to adjudicate that a nuisance existed and to order that it be abated implied the power to punish as for a contempt in the case of a violation of the decree (46 C. J. 799), and the most that could have been required to render the present individual defendants subject to such inherent power of the court, that is, if we assume that the decree was itself so drawn as to be subject of enforcement, was to show that they had acquired actual notice of the terms of the decree by the service of the same upon them or otherwise. [46 C. J. 800; 32 C. J. 487-491.] It is fundamental

that one with notice may be amenable to an injunction though not a party to the suit in which the injunction was issued; and we can think of no situation in which the rule would be of more deserving application than in the case of an injunction against a municipal corporation, whose affairs, in the very nature of things, must be carried on solely by those of its citizens who are from time to time elected or appointed to act for it.

So in importuning the court to secure him relief from the consequences of defendants' noncompliance with the judgment directing an abatement of the nuisance theretofore found to exist in front of his premises, it was not within the province of either plaintiff or the court to disregard and discredit the binding force of the original decree by bringing the present city officials into court for the purpose of having the court determine anew that its decree should likewise have binding force as to them, and consequently we think the court was correct in treating plaintiff's suit as in the nature of a proceeding for contempt of court and in ruling upon the sufficiency of his petition accordingly. Unfortunately for us, the court, in holding the petition subject to demurrer, did not see fit to designate upon which one or more of the eight grounds relied upon by defendant it based its ruling and counsel have therefore been more or less compelled to attempt to cover all the points at issue in their briefs, but of course it will be enough to warrant us in affirming the court's general order if we can say that the demurrer might have been properly sustained upon any one of the grounds assigned.

Now one of the grounds of the demurrer was that the mandatory provisions of the original decree were so indefinite and uncertain as not to warrant the court in holding the city officials in contempt for their failure to comply therewith, and we are of the opinion that regardless of any question of the merit of any of the other grounds assigned, the demurrer should at least have been sustained upon this particular ground.

It is an accepted legal proposition that for the decree of a court to suffice to be the basis of a charge of contempt by reason of a party's disobedience to or noncompliance with it, it must be specific and definite so as to inform the party to be bound thereby what he is to do or what he is not to do. [Magel v. Gruetli Benevolent Society of St. Louis, 203 Mo. App. 335, 218 S. W. 704.]

In this instance the court, in ordering that the nuisance should be abated, merely directed defendants "to provide larger outlets for such water, or that such water be diverted from gathering in quantities in front of and on plaintiff's premises." Undoubtedly this order served well enough to express the general view of the court that something should be done to remedy the unfortunate situation existing in front of plaintiff's home, but no one can say from reading

the court's decree what it was that the city officials were to be specifically required to do. Were they, for instance, to install an additional eighteen-inch pipe to drain the water into the nearest catch basin? If so, they put in such an improvement which failed to accomplish its purpose for want of a sufficient outlet, or at least certain of the reported cases in the controversy between the plaintiff and the city tend so to show. Were they to be expected to drain the water accumulating around plaintiff's property into sewers located in adjacent sewer districts and wholly paid for by abutting property owners, and thus serve plaintiff's individual convenience at the personal expense of such other property owners? Or, perchance, if it should appear that the complete and successful drainage of plaintiff's property would require the installation of a sewer of such length and size and so located as to exhaust the gross revenue of the city, was it that that the court had in mind?

Of course there was no evidence heard in the case, and the probabilities we have mentioned have been taken largely from the oral and printed arguments of counsel in purported explanation of why the condition complained of by plaintiff has not been remedied by the city. For our part we are not saying that the nuisance in question either can or cannot be abated in compliance with the order of the court. What we are saying is simply that no one can determine from the general context of the order what was expected to be done by the city officials towards the carrying out of the court's will, and that regardless of how valid it may be for other purposes, in the absence of such definite and specific requirements in the decree as respects the matter of its performance, it must be held insufficient in law to form the basis of a charge of contempt growing out of defendants' alleged noncompliance with it.

Upon the refusal of plaintiff to plead further following the entry of the order of the court sustaining the demurrer to his petition, final judgment went against him as a matter of course, and the same should be affirmed. The Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the Cape Girardeau Court of Common Pleas is, accordingly, affirmed. *Hostetter, P. J.*, and *Becker* and *McCullen, JJ.*, concur.

ON MOTION FOR REHEARING.

BENNICK, C.—In our principal opinion herein we have characterized the suit brought by plaintiff as being one in the nature of a contempt proceeding designed to seek the punishment of the individual defendants to the suit upon their further noncompliance with

the terms of the original decree adjudicating a nuisance to exist and ordering that it be abated; and we have further held that plaintiff's petition, so construed and considered, was demurrable in that the mandatory provisions of such original decree were so vague and indefinite in respect to what was expected to be done towards abating the nuisance as not to serve as the basis for the bringing of a charge of contempt growing out of any failure on the part of the defendants to have complied with such decree.

Now on motion for rehearing plaintiff reaffirms his position taken on submission of the case that it was in nowise his intention to have the officers of the defendant city punished for contempt; and again he earnestly and vigorously insists that his sole purpose in instituting the present suit founded upon the fact of defendants' noncompliance with the original decree was to avoid any bar of limitation of time arising upon the expiration of a period of ten years from and after the date of the rendition of such decree.

As the basis for the bringing of the present suit, and as evidencing the necessity for it, plaintiff relies upon section 886, Revised Statutes 1929 (Mo. St. Ann., sec. 886, p. 1168), which provides that every judgment, order, or decree of any court of record shall be presumed to be paid and satisfied after the expiration of ten years from the date of the original rendition thereof; or if the same has been revived upon personal service duly had upon the defendant or defendants, then after ten years from and after such revival; or in case a payment has been made on such judgment, order, or decree, then after the expiration of ten years from the last payment so made; and that after the expiration of ten years from the date of the original rendition or revival upon personal service, or from the date of the last payment, such judgment shall be conclusively presumed to be paid, and no execution, order, or process shall issue thereon, nor shall any suit be brought, had, or maintained thereon for any purpose whatever.

This statute, of course, is obviously to be read, just as the courts do read it, along with and as supplementing sections 1106-1113, Revised Statutes 1929 (Mo. St. Ann., secs. 1106-1113, pp. 1401-1404), which have to do generally with the right of a judgment creditor to sue out an execution upon his judgment, or to revive the judgment and lien by *scire facias*, at any time within ten years after the rendition of the judgment. We understand, too, that not only does section 886 serve under the particular circumstances noted therein to extend the time within which an execution may be issued upon a judgment (State ex rel. v. Buford (Mo. App.), 18 S. W. (2d) 526), but also that it permits the extension of the vitality of a judgment by the bringing of an action thereon short of the accrual of the bar of limitation, and this despite the method of revival by *scire facias* expressly provided by the other sections which have been heretofore referred to.

[Excelsior Steel Furnace Co. v. Smith (Mo. App.), 17 S. W. (2d) 378.]

So what plaintiff has in mind, in brief, is that his present suit is of the character of suit contemplated or at least permitted by section 886 for the revival or extension of a judgment or decree unsatisfied and about to expire by limitation of time, and that if the present suit had not been instituted by him, as it was, short of the expiration of ten years from and after the date of the rendition of the original decree, then that decree, by virtue of our several dormancy statutes, would not only have become dormant at the end of such ten-year period, but in fact, under the provisions of section 886, there would have arisen a conclusive presumption that the terms of the decree had been complied with, and no further or subsequent step would have been allowed on plaintiff's part by suit or otherwise looking to the matter of securing defendants' compliance with it.

The trouble with plaintiff's position is, however, that he reaches his conclusions regarding the necessity for and the propriety of his present suit only by assuming that the several dormancy statutes referred to are applicable to and control the case, when, as a matter of fact, or at least as we understand them, they are wholly inapplicable to it because of the inherent nature and character of the original decree.

It is a generally accepted theory of law that statutes relating to the dormancy of judgments or decrees and their revival by *scire facias* or otherwise have reference to money judgments capable of enforcement by execution, and that such statutes are not generally to be regarded as imposing a limitation of time upon the enforcement of judgments or decrees which are not for the payment of money or which are not enforceable by execution. [34 C. J. 655, 656, 658, 661.]

We think that our local dormancy statutes are clearly in accord with the theory underlying the enactment of that class of statutes generally, at least in so far as they are designed to have no application to judgments or decrees of the character of the original decree entered in plaintiff's favor, which, instead of requiring the payment of any money, was purely one adjudging a nuisance to exist and ordering that it be abated. We say this for the reason that our revival statutes by their very terms seem primarily to contemplate judgments or decrees giving rise to a lien against the real estate of the judgment debtor; and, of course, for a judgment or a decree to create a lien, it must be for a definite and certain sum of money, capable of collection by execution levied upon the property of the judgment debtor. [Hagemann v. Pinska, 225 Mo. App. 521, 37 S. W. (2d) 463; 34 C. J. 570-572.]

In the same manner, section 886, which is the very statute upon which plaintiff founds his pretended cause of action, is a statute ob-

viously enacted to declare a presumption, not of performance, but of payment of a judgment or decree after the expiration of ten years from the date of its original rendition, unless such presumption of payment is repelled by proof either of a revival duly had, or else of payment made upon the judgment. The very language of section 886, and the sole purpose to be served by it as declared upon its face, refute any idea that it was ever intended to apply to any judgment or decree except one which might be satisfied by payment, a requirement which logically, in accordance with the spirit of similar statutes quite generally enacted upon the basis of the common-law rule, means payment in money in satisfaction of a definite pecuniary liability adjudged by the court to exist between the parties to the judgment. [34 C. J. 692-693.]

It is of course entirely conceivable that our local statutes, though indeed ordinarily applicable only to judgments or decrees of a character to be capable of enforcement by execution as we have heretofore pointed out, may in some instances include and apply to judgments or decrees not so capable of enforcement, as in the case of a judgment against a judgment debtor whose property for one reason or another is exempt from levy and sale under execution; but so far as concerns section 886 at least, its application is limited by its own terms to judgments which, regardless of whether executions may be issued upon them, may in all events be satisfied by payment, and so it may not be held to extend to a judgment which requires the performance of any other act than the payment of money, the method for enforcing the performance of such type of judgments being specifically covered by section 1102, Revised Statutes 1929 (Mo. St. Ann., sec. 1102, p. 1398).

So we conclude that for want of a basis in law the present suit could not in any event have served the purpose which plaintiff claims for it and which he would have us ascribe to it, and he makes no contention that it was designed to accomplish or could have accomplished any other result. We are therefore prompted to repeat the observation made in our principal opinion, which was that if the suit is to serve any legitimate purpose whatsoever, it is to be regarded as one in the nature of a proceeding in contempt; and we must adhere to our former view that the original decree affords no basis for the maintenance of such a proceeding in view of the vagueness and indefiniteness of its provisions respecting what the defendants were to be called upon to do towards abating the nuisance found to exist in front of plaintiff's property.

It follows that the motion of plaintiff-appellant for a rehearing should be overruled; and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted

as the opinion of the court. Appellant's motion for a rehearing is, accordingly, overruled. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.,* concur.