In the Matter of BANK OF THE MANHATTAN COMPANY, Appellant and Respondent.

MICHAEL J. MURPHY, as Acting Industrial Commissioner, Respondent and Appellant.

Argued October 16, 1944; decided November 30, 1944.

*George E. Cleary* for petitioner-appellant and respondent. I. The constitutional provision in question, in clear and unambiguous language, prohibits the imposition of a greater tax burden on State banks than on national banks in the State. An interpretation which limits the scope and application of the prohibition to the discriminatory imposition of a specific

tax imposable on both classes of corporations cannot be supported by the language of the provision. (State Const., art. XVI, § 4; *McCulloch* v. *Maryland,* 4 Wheat. 316; *First Nat. Bank* v. *Anderson,* 269 U. S. 341; *Des Moines Bank* v. *Fairweather,* 263 U. S. 103.) II. Proceedings of the constitutional convention of 1938 clearly demonstrate that section 4 of article XVI was primarily intended to assure State banks tax equality with national banks. (*People ex rel. Sweet* v. *Lyman,* 157 N. Y. 368; *Reed* v. *McCord,* 160 N. Y. 330; *Matter of Goedel* v. *Palmer,* 15 App. Div. 86; *Western New York Water Co.* v. *Brandt,* 259 App. Div. 11; *Matter of Burns,* 155 N. Y. 23; *Matter of Dowling,* 219 N. Y. 44.) III. The unemployment insurance tax imposed on the employer for the period August 10 to December 31, 1939, was invalid because for that period New York State had power to impose this specific tax on national banks and discriminated against State banks by choosing not to exercise that power. (*Matter of Cassaretakis,* 289 N. Y. 119.) IV. Section 4 of article XVI of the Constitution prohibited for the entire year 1939 the imposition of greater tax burdens on State banks than were imposed on competing national banks. (*People ex rel. Sweeley* v. *Wilson,* 12 Misc. 174, 146 N. Y. 401; *Livoti* v. *Fitzgerald,* 255 App. Div. 711, 279 N. Y. 696; *People ex rel. Clark* v. *Adel,* 129 Misc. 82; *Franklin Society* v. *Bennett,* 282 N. Y. 79.)

*Nathaniel L. Goldstein, Attorney-General (Orrin G. Judd* and *Francis R. Curran* of counsel), for Acting Industrial Commissioner, respondent-appellant. Section 4 of article XVI of the State Constitution did not forbid the assessment and collection of unemployment insurance contributions from State banks in 1939. The State had no " power to tax " national banks for unemployment insurance purposes until after Congress granted permission. The New York Unemployment Insurance Law did not become unconstitutional with respect to taxation of State banks upon enactment by Congress of the Act of August 10, 1939. (1936 Rep. Atty. Gen. 271; *McCulloch* v. *Maryland,* 4 Wheat. [U. S.] 316; *First Nat. Bank* v. *Anderson,* 269 U. S. 341; *Des Moines Bank* v. *Fairweather,* 263 U. S. 103; *Peoples N. Bank & T. Co.* v. *Co. of Westchester,* 261 N. Y. 342; *Matter of Liquidation of State Bank of Binghamton,* 152

Misc. 579; *Barrencotto* v. *Cocker Saw Co.*, 266 N. Y. 139; *Matter of Burns* v. *Flynn*, 268 N. Y. 601; *People ex rel. Clark* v. *Gilchrist*, 243 N. Y. 173; *Matter of Fay*, 291 N. Y. 198; *Matter of Murray* v. *LaGuardia*, 291 N. Y. 320.)

LEHMAN, Ch. J. Bank of the Manhattan Company was incorporated by a special act of the Legislature of the State of New York on April 2, 1799. It conducts a general banking business as authorized by the laws of the State. The parties have stipulated that throughout the year 1939 it " exercised substantially similar functions and engaged in substantially similar business as national banks in State of New York incorporated under the laws of the United States." Article 18 of the Labor Law entitled " Unemployment Insurance Fund " was added to the Labor Law by chapter 468 of the Laws of 1935. It provided that " on and after the first day of January, nineteen hundred thirty-six, contributions shall be payable by each employer then subject to this article " (§ 515, see present § 560). Bank of the Manhattan Company was an " employer then subject to this article " and it paid the contributions for which it was liable under the provisions of the Act. National banks doing similar business in this State could be taxed by the State or compelled to pay " contributions," prescribed by State law, though not denominated a tax, only as permitted by Congress and in conformity with the conditions annexed to such permission. (*First Nat. Bank* v. *Anderson*, 269 U. S. 341.) When the Unemployment Insurance Fund statute was enacted, the tax or enforced contribution imposed by the statute on " employers " did not fall within the limited scope of the permission to tax national banks previously given by Congress to the State. National banks were in consequence exempt from the burden to which not only State banks but all other employers as defined in the Unemployment Insurance Fund statute were subject.

The Constitution of the State as revised, with amendments adopted by the Constitutional Convention of 1938 and approved by vote of the People on November 8, 1938, has been " in force from and including the first day of January one thousand nine hundred thirty-nine." (Art. XX, § 1.) Among the amendments adopted by the Convention and approved by the People

is the provision that: "Where the state has power to tax corporations incorporated under the laws of the United States there shall be no discrimination in the rates and method of taxation between such corporations and other corporations exercising substantially similar functions and engaged in substantially similar business within the state." (Art. XVI, § 4.) On August 10, 1939, section 1606 of the Internal Revenue Code was amended by the Congress of the United States. The pertinent provisions of the amending Act are " (a) no person required under a State law to make payments to an unemployment fund shall be relieved from compliance therewith on the ground that he is engaged in interstate or foreign commerce * * *. (b) The legislature of any State may require any instrumentality of the United States * * * to make contributions to an employment fund under a State unemployment compensation law * * * and * * * to comply otherwise with such law. * * *" (Social Security Act Amendments of 1939, 53 U. S. Stat., ch. 666, § 613, pp. 1391, 1392). Concededly, the exceptions and conditions annexed to the permission given by Congress are not pertinent upon this appeal.

The Legislature of the State of New York at its next succeeding session availed itself of the permission granted by Congress and added a new section to the Unemployment Insurance Fund statute. It provides that any Federal instrumentality not excepted from the permission given by Congress " shall, beginning with January first, nineteen hundred forty be subject * * * to all the provisions of this article " and that " this section applies to national banking associations and any other federal instrumentalities which would be immune from contributions required under this article without the authorization conferred by subsection b of section sixteen hundred and six of the federal unemployment tax act." (§ 502-a now § 560, subd. 6.) The statute conforms to the conditions annexed by Congress to its permission, and beginning January 1, 1940, national banks as well as State banks and other employers have been required to pay into the unemployment insurance fund the same " contributions " as required by the statute of 1940.

Bank of the Manhattan Company paid contributions into the unemployment insurance fund based upon its payrolls for the

entire year 1939, but thereafter applied for a refund of these contributions in accordance with section 516-a of the statute (now § 570, subd. 6). The referee to whom the application for a refund was referred denied the application. The Appeal Board adopted his findings and conclusions and affirmed his decision. The Appellate Division held that the bank was entitled to a refund of its contributions from August 10, 1939, the date when Congress authorized the Legislature to require national banks to make. contributions, to January 1, 1940, the date from which national banks were subject to the provisions of the unemployment law under the statute enacted by the Legislature pursuant to the permission of Congress. Leave to appeal was granted to both parties, the Appellate Division certifying to us the questions: "(1) Is the Appellant, Bank of the Manhattan Company, entitled to a refund of contributions under the Unemployment Insurance Law, paid with respect to the wages of its employees for the period January 1, 1939, to August 9, 1939, inclusive? (2) Is the Appellant, Bank of the Manhattan Company, entitled to a refund of contributions under the Unemployment Insurance Law, paid with respect to the wages of its employees for the period August 10, 1939, to December 31, 1939, inclusive? " We treat the order as final and do not answer the questions.

The members of the Constitutional Convention of 1938 knew, of course, that Congress had long before that time granted to the States permission to impose a tax on the shares of national banking associations or on the national banking associations in any one of " four forms of taxation " (U. S. Code, tit. 12, § 548, Revised Statutes, § 5219, as amended). Under the terms of the Congressional statute, the imposition by any State of any one of the " four forms of taxation shall be in lieu of the others * * * " and Congress annexed to its permission to tax national banks granted to the States, a restriction which prevents a State from discriminating in the exercise of the taxing power *in favor of State banks or individuals competing with national banks.* Without such a restriction a State, by imposing upon national banks an onerous tax without subjecting State banks or their shareholders to a similar tax, could effectively prevent national banks from carrying on business within the State in competition with State

banks. "The purpose of the restriction is to render it impossible for any State * * * to create and foster an unequal and unfriendly competition with national banks, by favoring shareholders in state banks or individuals interested in private banking or engaged in operations and investments normally common to the business of banking." (*First Nat. Bank* v. *Anderson*, 269 U. S. 341, p. 347, *supra*.)

Until January 1, 1939, the Legislature was under no positive restriction precluding it from discriminating in the exercise of the tax powers *in favor of national banks* competing with State banks. By such discrimination the Legislature might put an end to the dual system of banking, in equal and friendly competition by corporations created by the State as well as by corporations created by the United States and might perhaps effectively vest in national banks control of all banking. That the Legislature of a State would discriminate against corporations created by the State, or against residents of the State, may be improbable, but the members of the Constitutional Convention of 1938 nevertheless decided that the power to impose a discriminatory tax should be expressly withheld "where the state has power to tax" national banks; and the people have approved the provisions in the Constitution which withholds from the Legislature power to impose in such circumstances a discriminatory tax upon State banks.

On the first of January 1939 the Constitution so approved was in force. At that time the Legislature had, as we have pointed out, "power to tax" national banks but only by the imposition of one of "four forms of taxation". The restrictions upon the legislative power to tax State banks in the State Constitution would be without any substantial effect if the words "where the state has power to tax corporations incorporated under the laws of the United States" were construed so narrowly that the Legislature would still remain free to impose upon State banks any other form of taxation, however onerous, which it saw fit to impose. Such construction would, it is clear, be contrary to the intent of the constitutional provision. It would afford the State banks no protection against destructive discrimination in tax burdens.

On the other hand, it is equally clear both from the language of the Constitution and from the debates in the Constitutional

Convention that the restriction was not intended to exempt State banks from the imposition of an excise tax, or enforced contribution to which corporations and persons falling within a general class of employers including banks and bankers as well as other corporations are subject, even though Congress had not given to the States power to include national banks within that class. Certainly the framers of the restrictive provisions had no intention to confer upon State banks immunity from the existing statutory obligation to contribute like other employers to the unemployment insurance fund, merely because in a completely different field the State was empowered to impose a tax on national banks in one of four permitted forms. Indeed in the debates of the Constitutional Convention the proponents of the restrictive provision willingly conceded that there was no existing discrimination in taxation of banks of a kind which the proposed provision was intended to prohibit in the future.

" A consideration of the course of judicial decision on R. S. 5219 and its predecessors can leave no doubt that the various restrictions it places on the permitted methods of taxation are designed to prohibit only those systems of state taxation which discriminate in practical operation *against* national banking associations or their shareholders *as a class.*" (Italics are ours.) (*Tradesmens Bank* v. *Tax Comm'n*, 309 U. S. 560, 567.) Similarly the restrictions placed by the State Constitution on the legislative power of taxation are designed to prohibit only those systems of State taxation which discriminate in practical operation *in favor* of national bank associations or their shareholders *as a class* and apply only within a field where the State has power to tax corporations incorporated under the laws of the United States which exercise substantially similar functions. The letter and spirit of the restriction is violated by a State law which imposes upon State banks or their shareholders *as a class* a higher tax than it imposes upon national banks or their shareholders as a class, where the State would have power to impose a tax without discrimination upon national banks and their shareholders as a class. Neither the spirit nor the letter is violated by a statute, general in terms and effect, which imposes a tax or enforced contributions, without discrimination, upon a broad class in which banks are included, not because

they are engaged in banking, but because they are employers; though so long as Congress withholds permission to States to impose such a tax on national banks in accordance with any rate or method, national banks are exempt from the burden to which other employers are subjected. Until August, 1939, when Congress did grant to the States permission to impose such a burden on national banks, the constitutional restriction had no application and the State banks remained subject to the Unemployment Insurance Law.

When Congress granted to the States permission to require national banks to contribute to such a fund, the constitutional restriction did, however, apply. The State had power then to tax national banks, though it could exercise that power only through legislative action, and the Legislature was not then in session. At its next session the Legislature chose to impose the same burden on national banks as on State banks, beginning January 1, 1940. From that time there was no discrimination in favor of national banks. From August, 1939, until that time, the State could not impose upon State banks a tax to which national banks were not subjected in accordance with the power to tax which had been conferred upon the State.

The order should be affirmed, with costs. The questions certified are not answered.

LOUGHRAN, RIPPEY, CONWAY, DESMOND and THACHER, JJ., concur; LEWIS, J., taking no part.

Order affirmed, etc.