R. E. HARRINGTON, INC., A Corporation, Plaintiff-Appellant,

v.

James E. FRICK and Allen R. Shoults, Defendants-Respondents.

No. 33428.

St. Louis Court of Appeals.

Missouri.

Sept. 16, 1969.

Motion for Rehearing or to Transfer to Supreme Court Denied Oct. 14, 1969.

Application to Transfer Denied Dec. 8, 1969.

**846**

Coburn, Croft, Kohn & Herzog, St. Louis, for plaintiff-appellant.

John A. Joyce, St. Louis, for defendants-respondents.

DOERNER, Commissioner.

Plaintiff appeals from a judgment and decree denying its application for a citation for contempt for violating an injunction, dismissing the order to show cause which had been previously issued, and discharging defendants.

Plaintiff is an Ohio corporation, licensed to do business in Ohio, Missouri, and Texas, and is and had been engaged in the business of furnishing unemployment compensation cost control services to its customers. In 1965, while defendants Frick and Shoults were the executive vice-president and a vice-president, respectively, of plaintiff, they executed agreements with the plaintiff which provided, in general, that for a period of three years following the termination of their employment defendants would not engage in or become interested, directly or indirectly, in the business of consultation services in unemployment compensation and workmen's compensation. While so employed, in total disregard of the positions of trust and confidence they occupied and of the agreements they had executed, defendants in 1966 entered into a scheme to go into a business in St. Louis to compete with plaintiff, under the name of "United

Tax Service, Inc.," and upon the discovery of their faithlessness were discharged in June 1966. Thereafter defendants embarked upon a campaign to discredit plaintiff with its customers and contacted a considerable number not only to solicit the customers' business but to induce the latter to cancel their contracts with plaintiff. Twenty-three did so, with a loss to plaintiff of $32,066.48. Defendants' activities continued until halted by a temporary restraining order, and after a trial the Circuit Court of the City of St. Louis entered a judgment and decree granting plaintiff a permanent injunction. On appeal, we affirmed. R. E. Harrington, Inc. v. Frick, Mo.App., 428 S.W.2d 945.

The judgment and decree granting the permanent injunction is quoted at length in our prior opinion, 428 S.W.2d 947, 948, and need not be repeated here. In brief, defendants were prohibited for a period of three years after June 14, 1966, from soliciting or attempting to divert away plaintiff's customers, and from making statements to plaintiff's customers damaging or detrimental to plaintiff's business. It also provided that defendants were enjoined from:

" '(e) For a period of three (3) years after June 14, 1966, engaging in or becoming interested directly or indirectly, as an individual, partner, stockholder, director, officer, agent, employee, trustee, or in any other relation or capacity whatsoever in and to the business of consultation services in unemployment compensation or workmen's compensation within the States of Ohio, Missouri, or Texas.' "

In its petition in this proceeding plaintiff charged that the defendants violated the foregoing provision of the permanent injunction by engaging in the business of consultation services in unemployment compensation within the State of Missouri. In essence, that business consists of furnishing cost control services to customers

for the purpose of minimizing unemployment compensation taxes due by the customers. It involves obtaining from the State authorities their unemployment compensation rate sheets, reviewing and analyzing the quarterly wage reports filed by customers with the authorities, the giving of advice as to the proper rates due, and the processing of claims for refunds for overpayments, in the course of which, of course, there is a considerable amount of communication involved by mail and telephone.

The undisputed evidence is that in March 1967, defendants formed an Illinois corporation under the name of Midwest Tax Service, Inc. Frick, the president, owns 120 of the 150 outstanding shares, and Shoults, vice-president and service manager, owns 15 shares. The two, together with one Lyman Link, compose the members of the board of directors. The general offices of Midwest were originally established in East St. Louis, Illinois but about April 27, 1968, they were moved to 4030 Chouteau Avenue in the City of St. Louis, Missouri. Thereafter all of the "servicing" or "processings" of Midwest's customers was carried on by its staff of employees at its general offices in St. Louis. At the time the general offices were moved to St. Louis, Frick sent a letter to all of Midwest's customers stating that it was moving to larger quarters, "Due to our tremendous growth during the past year * * *." However, during the trial Frick testified that while Midwest had enjoyed a tremendous growth, the primary reason for the move to St. Louis was because, "* * * We had quite a bit of trouble with the colored situation * * *" in East St. Louis. Frick also related that prior to the move he consulted his attorney and was advised that it would be permissible to make the move provided that Midwest did not advertise, place its name on the building bulletin board, list its telephone in Missouri, contact any customers of plaintiff in Missouri, or solicit any business in that state. He added that counsel's advice had been followed.

In our former opinion we defined what constituted engaging in the business of consultation services in unemployment compensation in the following language (428 S.W.2d 950) :

"The trial court found that the phrase 'engaged in business' within any state, as used in the restrictive covenant in the employment contract and under the evidence in this case, did not mean the mere servicing or soliciting of customers, but meant the setting up of an office or place of business for soliciting or servicing of customers, or having personnel in such offices who are performing corporate activities. We agree. The trial court did what it should have done in this instance, which was to declare the states in which plaintiff was engaged in business, as that term was intended to be used in the agreement in question, which states were Ohio, Missouri, and Texas."

In the light of that definition and the undisputed facts there can be no reasonable doubt that defendants, as stockholders, directors, and officers of Midwest, did engage in the business of consultation services in unemployment compensation in Missouri after April 27, 1968, in violation of the permanent injunction. While Midwest may not have solicited prospective customers in Missouri, as Frick testified, such solicitation is only one facet of the business. Of equal or even greater importance is the "servicing" of the company's customers. Here Midwest set up and maintains its general offices in Missouri, and staffs it with the personnel who perform and carry on the activities which are the real object and purpose of its corporate existence, the rendering of consultation services in unemployment compensation. In short, in violation of what had been specifically prohibited by the permanent injunction, the defendants, through Midwest, carried on all phases of that business in Missouri except that of the solicitation of new customers.

In their brief defendants do not deny that their activities were prohibited by the permanent injunction. The thrust of their argument is that, "Trial Court did not err in finding for defendants as civil contempt cannot be found absent injury to complainant." By absence of injury defendants refer to the fact that plaintiff did not adduce any evidence that it sustained a direct monetary loss as a result of defendants' violation of the injunction. But it does not follow that one may violate a court's judgment and decree with impunity or be found not guilty of contempt merely because the party in whose favor the injunction was granted has sustained no direct monetary loss as a result of its violation. Wyoming v. Colorado, 309 U.S. 572, 60 S.Ct. 765, 84 L.Ed. 954. In a proceeding for civil contempt, as is here involved, the court whose injunction has been violated has two strings to its bow. It may commit the violator to imprisonment until he complies with the court's order, in which case the commitment is in the nature of an execution to enforce the judgment of the court; or, it may levy a compensatory fine against the violator, payable to the complainant. Odom v. Langston, 358 Mo. 241, 213 S.W.2d 948; Huegel v. Kimber, Mo.App., 228 S.W.2d 833. Since a fine, if imposed, is intended to afford the complainant relief for his pecuniary injury it must, of course, be measured by the monetary loss he has sustained. Gompers v. Buck's Stove and Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797. But there is authority for the proposition that even where there is no proof of actual damages the court may impose a nominal fine. Red River Valley Brick Corp. v. City of Grand Forks, 27 N.D. 431, 146 N.W. 876; Nieuwankamp v. Ullman, 47 Wis. 168, 2 N.W. 131; 17 C.J.S. Contempt § 95, p. 272. And in one case where no loss had occurred a decree making the defendant liable for a fine of $5,000 for any future violation was upheld. Chas. Pfizer & Co. v. Davis-Edwards Pharmacal Corp., 2 Cir., 385 F.2d 533.

■ In addition, the court may in its discretion allow the complainant a reasonable attorney's fee, to be assessed against the violator as a part of the expenses and costs incurred by the complainant in the prosecution of the contempt proceedings. State ex rel. Gentry v. Becker, 351 Mo. 769, 174 S.W.2d 181; Toledo Scale Co. v. Computing Scale Co., 261 U.S. 399, 43 S.Ct. 458, 67 L.Ed. 719; Folk v. Wallace Business Forms, Inc., 4 Cir., 394 F.2d 240; Chas. Pfizer & Co. v. Davis-Edwards Pharmacal Corp., supra; Kasparek v. May, 178 Neb. 425, 133 N.W.2d 614; Grunberg v. Louison, 343 Mass. 729, 180 N.E.2d 802; 55 A.L.R.2d 979; 17 C.J.S. Contempt § 96, p. 274; 17 Am.Jur.2d Contempt § 114, p. 99. In the instant case plaintiff prayed for an allowance of attorney's fees and introduced evidence that a total of 61 hours had been spent by plaintiff's counsel in the preparation for and the trial of the contempt proceedings. Counsel also testified that a charge of $2135 was a reasonable attorney's fee for the services rendered.

■ The difficulty which gives us concern in this case is the relief to be granted plaintiff in view of the existing circumstances. The three year period specified in the permanent injunction expired on June 14, 1969, while this contempt proceeding was pending on appeal. Plaintiff asks that we extend and continue it for an additional year, or until June 14, 1970, but it cites no authority in support of such a request and the decision of this court in Lademan v. Lamb Const. Co., Mo.App., 297 S.W. 187, indicates that such an enlargement or extension of the permanent injunction may not be made in a proceeding of this nature. After a careful consideration of all aspects of the matter we are of the opinion that absent any evidence of pecuniary damage suffered by the plaintiff, and the expiration of the period specified in the permanent injunction, the relief granted should be limited to the recovery of a nominal compensatory fine and costs, including the allowance of a reasonable attorney's fee for the services rendered in the prep-

aration for and trial of the proceedings in the trial court. It has been held that no allowance can be made for such services rendered in the appellate court. Norstrom v. Wahl, 7 Cir., 41 F.2d 910.

Accordingly, the judgment is reversed and the cause is remanded with directions to enter a judgment and decree finding the defendants guilty of civil contempt, imposing a fine of one dollar on each of the defendants, and allowing plaintiff its costs, including an attorney's fee of $2135.00.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment reversed and cause remanded with directions to finding defendants guilty of civil contempt, impose a fine of one dollar on each of the defendants and allow plaintiff its costs, including attorney's fee of $2135.00.

WOLFE, P. J., and DOWD and BRADY, JJ., concur.