Jules B. GERARD, et al., Plaintiffs-Respondents,

v.

Mike KODNER, et al., Defendants,

Mike Kodner, Martin Kodner and John Kodner, Defendants-Appellants.

No. 33810.

St. Louis Court of Appeals, Missouri.

May 25, 1971.

John J. McAtee, Clayton, for defendants-appellants.

Martin Schiff, Jr., Fordyce, Mayne, Hartman, Renard & Stribling, Clayton, for plaintiffs-respondents.

WEIER, Commissioner.

Defendants Mike Kodner, Martin Kodner and John Kodner appeal from a judgment entered February 4, 1970, finding them in contempt of court and assessing damages against them in the sum of $2,-150.00. This contempt proceeding arose out of a consent decree agreed to by the parties and entered by the trial court on February 21, 1965. Suit had previously been filed by three owners of property in real estate subdivisions known as Plats 1, 2 and 3 of Bellerive Estates. The entire subdivision had been planned and developed by the defendants above named and three defendant corporations, of which the individual defendants were officers. The numerous complaints culminating in the suit are shown by the multiple-count petition which sought declaratory relief to establish the identity of the lawful trustees of the subdivision, to enjoin defendants from using lots and buildings in the subdivision for commercial purposes, to allow placement of partial barricades upon streets within the subdivision to control traffic and to establish a constructive trust as to profits which plaintiffs contended were improperly realized through defendants' commercial operations. To this petition defendants filed answer and a counterclaim. Before any trial of the issues, the parties consented to a decree and this was approved by the court.

That portion of the decree upon which this contempt proceeding was based, contained in paragraph 4 of the decree, required the trustees of the subdivision and the defendants to sign all documents necessary to permit dedication of the streets of the subdivision to St. Louis County and further provided " * * * that the defendants are ordered and compelled to pay all costs arising from the dedication of the streets, including but not limited to, the costs of repairing the streets to the satisfaction of the legally designated County official or officials, and the cost of preparing the necessary documents." It is this last quoted clause which defendants Kodner were found to have disobeyed.

Following entry of the decree, on April 15, 1965, the plaintiffs filed an application with the court to cite defendants Kodner to show cause whey they should not be held in contempt because of an alleged failure to comply with certain portions of the decree having nothing to do with the above paragraph. In their return to the order to show cause, however, the defendants not only alleged their continuing efforts to comply with that part of the decree which they were charged with resisting and disobeying, but also affirmatively alleged they were awaiting the results of the inspection by the County Engineer as to repairs and rebuilding of streets and that as soon as this inspection was complete they would commence necessary construction to meet county requirements.

On May 10, 1965, a court order, in the form of a memorandum, approved by the attorneys, was signed by the judge. It required the defendants to comply with the decree by May 17, 1965, in all respects except that portion that required the repair of streets to the satisfaction of county of-

ficials, and as to that part of the decree, performance was to be delayed until such time as the nature and extent of the repairs were made known by such county officials.

On June 1, 1965, an amended application for an order to show cause was filed. Here again the matter of failure to comply with paragraph 4 was not included. Then one and one-half years later, on January 31, 1967, plaintiffs petitioned the court for an allowance for attorneys' fees and engineering costs which plaintiffs allegedly incurred because of the failure of defendants to repair the streets so that dedication could be accepted by the county council. They then followed this on April 3, 1967, by filing an amended petition to enforce the consent decree and an application for contempt citation, which for the· first time raised by formal pleading the issue of failure to comply with that part of paragraph 4 of the decree which required defendants to pay the cost of repairs to the streets to the satisfaction of the county officials. Defendants filed their return alleging compliance and among other matters stated they were in the process of completing the street program which had been delayed by engineering problems and obstructive tactics of plaintiffs which hindered performance. With issues joined on the failure to comply with that part of the decree requiring defendants to pay for the cost of repairing the roads, the court commenced a series of hearings, five in number, the first on May 15, 1967 and the last on March 28, 1969.

Details of the evidence would serve no useful purpose here. It is obvious, however, that there were long periods of inaction on the part of defendants. No repairs were made to the streets so they might be acceptable to the county from the date of the decree, until February 14, 1967, when test-hole drilling was commenced. After the county highway engineer had made a report, defendants employed an engineering firm which found discrepancies, but these were apparently not taken up with the county engineer by that firm. And defendants did not confer thereafter with the county engineer until March or April of 1967. Certainly from the evidence, the court could find and infer that defendants were not expediting the construction and repairs with the speed and dispatch that the mandate of a court decree should command and the parties commanded should observe.

On February 4, 1970, the court entered its judgment from which this appeal is taken. It found that defendants Kodner had willfully disregarded the court decrees of February 24, 1965, and May 10, 1965, and had resisted and disobeyed the decrees for a period in excess of 15 months. It further found the plaintiffs were obliged to file the proceeding to cite defendants for contempt and were compelled to incur expenses of $150.00 for the services of an engineer and an amount in excess of $2,000.-00 for attorneys to compel enforcement of the decrees. The court further found that necessary repairs to the streets had been completed and formal dedication had been accepted by the county. As previously indicated, the court thereupon adjudged defendants Kodner to have committed acts constituting contempt of court and, using the second string of its bow,[1] rendered judgment for compensatory damages in the sum of $2150.00.

■ We are first confronted with a motion to dismiss defendants' appeal because of the failure of their brief to conform to the requirements of Civil Rule 83.05, V.A.M.R., particularly with regard to the requirements of setting forth a fair and concise statement of the facts with page refer-

---

1. The power of a court to punish for civil contempt has been depicted as being a bow with two strings. Using the first string, the court may commit the violator to imprisonment until he complies with the order, or, using the second string, it may levy a compensatory fine against the violator, payable to the complainant. R. E. Harrington, Inc. v. Frick, Mo.App., 446 S.W.2d 845, 848[3].

680

ences to the transcript on appeal and a concise statement of the actions and rulings of the trial court claimed to be erroneous, setting out in points relied on wherein and why they are claimed to be erroneous. Although the appellants' brief is subject to criticism, in that it is inadequately referenced to pages in the transcript, given to advocacy in the statement and perhaps verbose in the points relied on, nevertheless, in the interest of justice, so that the case may be disposed of on its merits, we decline to impose the harsh action of dismissal. Civil Rule 83.24, V.A. M.R.; Dietrich v. Pulitzer Publishing Co., Mo., 422 S.W.2d 330, 334[9]; Green v. Sutton, Mo., 452 S.W.2d 200, 206[1].

█ Defendants raise as the principal issue on appeal the sufficiency and validity of that part of the decree which they are found to have resisted and disobeyed. They contend that that portion of the judgment as to the matter of street repairs did not determine the rights, duties and obligations of the parties in a final and definite manner but left any issue as to compliance within the discretionary determination of a county official. Our reading of paragraph 4 of the decree leads us to the inevitable conclusion that it is not enforceable in a contempt proceeding. Under its terms defendants are required "to pay all costs arising from the dedication of the streets, including but not limited to, the costs of repairing the streets to the satisfaction of the legally designated County official or officials, and the cost of preparing the necessary documents." It is an order to pay some amount in the future which must be determined after repairs have been completed to the satisfaction of an official, who turns out to be the County Highway Engineer, so that streets may be dedicated. This dedication, according to the evidence, could be accomplished only after acceptance by the County Council, which in turn relied upon the recommendations and reports respecting compliance prepared and forwarded to it by the County Highway Engineer. The County High-

way Engineer authored a report dated October 29, 1965, which incorrectly located and specified defective paving. It recommended replacement of more new concrete than was eventually needed. Later, on April 25, 1967, he filed an amended report which changed his recommendations so that less replacement of concrete slabs was deemed necessary. A third report was filed on February 23, 1968, which embodied changes from the previous report. Other changes were later required before final approval. We point this out not to criticize the County Highway Engineer. There was actually no way to determine many of the deficiencies until tests were made or work commenced. Nevertheless, evidence indicated a savings of 1000 square yards of concrete because of changes made in the 1967 report as to requirements set forth in the 1965 report. Requirements for this repair work, of their very nature, also changed from time to time as the work progressed, depending in large part on the conditions found as defective parts were removed or uncovered.

In order to complete the objectives of the decree and compel performance of this loosely written, open-end obligation of defendants, the trial court was compelled to hold numerous conferences with lawyers, five evidentiary hearings, and at least one on-site inspection with consent of the parties. It was only due to the persevering and diligent supervision by the court of the parties and the continuous labor of the attorneys that after a period of approximately five years the streets were repaired and accepted by the county. The court must be complimented upon its persistent, patient and laborious effort, which eventually brought to completion the objectives of this part of the consent decree. But no court of equity should be placed in the position of a construction superintendent.

█ As pointed out by plaintiffs, a consent judgment has the same force and effect as any other judgment reached on its merits. It is accorded the same force

as any other judgment. State ex rel. Diners' Financial Corporation v. Swink, Mo. App., 434 S.W.2d 593, 596[3]. But the fact of consent cannot impart validity to a judgment which it does not possess. Thus, a decree which the court had no jurisdiction to enter did not become a valid judgment merely because it was consented to by the parties. State ex rel. McManus v. Muench, 217 Mo. 124, 117 S.W. 25, 30.

 It is well established law that to be valid, a judgment must be susceptible of enforcement in the manner provided by law. It must be in such form that the clerk is able to issue an execution upon it which an officer will be able to execute. If it is a judgment for money, it must specify with definiteness and certainty the amount for which it is rendered. Taylor v. Taylor, Mo.App., 367 S.W.2d 58, 62[6,7]. In the case before us, the judgment required that defendants pay the costs of repairing streets to the satisfaction of a public officer. Anything more indefinite and uncertain could not be imagined. Although the costs of repair were eventually paid according to the finding of the court, it took some five years after rendition of judgment before this was finally accomplished; and then the total amounts paid by defendants never appear in the record. The order of the court finding defendants in contempt for failing to obey the decree as to paragraph 4 cannot be upheld because the mandate is uncertain and indefinite. In order that a charge of contempt may be sustained because of disobedience to a court decree or order, it must be so specific and definite as to leave no reasonable basis for doubt as to its meaning; and the decree or order will not be expanded by implication in the contempt proceeding to supply the deficiency. Middleton v. Tozer, Mo.App., 259 S.W.2d 80, 88; Kelly v. City of Cape Girardeau, 230 Mo.App. 137, 89 S.W.2d 693, 696[6,7]; Magel v. Gruetli Benev. Soc. of St. Louis, 203 Mo.App. 335, 218 S.W. 704, 706[2]; G_____ v. Souder, Mo.App., 305 S.W.2d 883, 885 [2].

A problem that could be involved in the enforcement of paragraph 4, which was not raised, but which further confirms the invalidity of the judgment, would be the use of the contempt process to enforce a judgment requiring defendants to pay money; in this case, the cost of repairing the streets. If the court were to use the first string of its bow (R. E. Harrington, Inc. v. Frick, Mo.App., 446 S.W.2d 845, 848[3], supra, footnote #1) and imprison the violator of its order, such imprisonment would be in direct violation of Article I, Section 11, Missouri Constitution of 1945, V.A.M.S. Partney v. Partney, Mo.App., 442 S.W. 2d 117, 119[2]; Ex parte Fowler, 310 Mo. 339, 275 S.W. 529, 533[7], (distinguished in Zeitinger v. Mitchell, Mo., 244 S.W.2d 91, 98, where the person ordered to pay had the fund in cash money in his possession).

Because of our determination on the issue of validity, the other points relied on by defendants to reverse the judgment of contempt will not be considered.

The judgment is reversed.

PER CURIAM:

The foregoing opinion by WEIER, C., is adopted as the opinion of this Court. Accordingly, the motion to dismiss is denied. The judgment is reversed.

BRADY, P. J., and DOWD, J., concur.

WOLFE, J., not participating.