RINGSBY TRUCK LINES, INC., et al., Appellees, (Plaintiffs below),

v.

UNITED STATES of America and Interstate Commerce Commission, (Defendants below),

v.

The NATIONAL SMALL SHIPMENTS TRAFFIC CONFERENCE, INC., and Drug and Toilet Preparation Traffic Conference, Appellants. (Intervening Defendants below).

No. 72–1887.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted July 9, 1973.

Decided Dec. 13, 1973.

Rehearing Denied Feb. 21, 1974.

fendants below, from the judgment of a statutory three-judge court convened in the United States District Court for the District of Colorado. The court vacated and set aside an Interstate Commerce Commission rate cancellation order and remanded the matter to the Commission for further proceedings.

A full understanding of the issues presented here requires a detailed accounting of the complex procedural history antedating this appeal. By schedules which became effective on August 1, 1964, appellees-motor carriers established a general three percent increase in their transcontinental rates and charges. In response to a filed protest the Interstate Commerce Commission instituted an investigation into the lawfulness of this increase but decided, pending the outcome of its investigation, not to suspend the operation of the increase but rather to permit it to become effective. The ICC ultimately concluded, however, that the increase had not been shown to be just and reasonable and on April 15, 1966 it ordered that the rate increase be canceled before June 1966. Increased Class and Commodity Rates, Transcontinental, 326 I.C.C. 397. A petition for reconsideration was denied but the original cancellation order was modified so as not to become effective until September 12, 1966.

The motor carriers instituted an action in the United States District Court for the District of Colorado, seeking to set aside, annul and enjoin the rate cancellation order. The United States was joined with the ICC as a mandatory defendant under 28 U.S.C. §§ 2321, 2322. Appellants-shippers were permitted to intervene in this action. On September 9, 1966 a temporary restraining order was entered preventing the ICC from canceling the rate increase and on November 4, 1966 the court directed that this order remain in effect until a final judicial determination was made.

A three-judge district court was convened pursuant to 28 U.S.C. §§ 1336, 2325, and 2284. On January 5, 1967 the

William Q. Keenan, New York City (James L. Tilly, Denver, Colo., of counsel; Arsham & Keenan, New York City, and Tilly & Graves, Denver, Colo., with him on the brief), for appellants.

Alvin J. Meiklejohn, Jr., Denver, Colo. (David E. Driggers, of Jones, Meiklejohn, Kehl & Lyons, and Z. L. Pearson, Jr., William E. Kenworthy and Gerald W. Hess, Denver, Colo., were with him on the brief), for appellees.

Before LEWIS, Chief Judge, and BARRETT and DOYLE, Circuit Judges.

LEWIS, Chief Judge.

This appeal is brought by the National Small Shipments Traffic Conference, Inc. and the Drug and Toilet Preparation Traffic Conference, intervening de-

court vacated the rate cancellation order and remanded the matter to the ICC for further proceedings. Ringsby Truck Lines, Inc. v. United States, D.C.Colo., 263 F.Supp. 552. The court concluded that the findings and reasoning of the ICC were insufficient to support its holding and that a remand was necessary to afford the ICC an opportunity to articulate the basis of its holding.

The shippers appealed to the United States Supreme Court under 28 U.S.C. § 1253, contending that any restitutionary claim for excessive rates charged would be destroyed if the judgment of the district court were permitted to stand. On February 1, 1967, less than one month after the initial remand, the ICC affirmed its previous decision canceling the rate increase. Increased Class and Commodity Rates, Transcontinental, 329 I.C.C. 420. It articulated as the basis of its decision the failure of the motor carriers to sustain their burden of proof of establishing that the rate increase was just and reasonable with the type of evidence which they had been given notice to provide. The ICC conceded that the quantum of proof necessary to support an increase in motor carrier rates was different and heavier than that required in the years prior to 1963, but stated that this change had been set forth in its decisions in and after 1963 and in specific detail in an order entered on August 3, 1964. The motor carriers were directed to cancel the subject rate increase on or before March 10, 1967, but the order provided that its effectiveness would be stayed or postponed if a further complaint was filed in district court by one or more of the motor carriers prior to the March 10 compliance date.

The instant action was filed by the motor carriers on February 27, 1967, seeking to annul, set aside, and vacate the second ICC rate cancellation order. The three percent rate increase was superseded by a further increase which became effective on August 29, 1967. On September 4, 1968 the shippers were al-lowed to intervene in the instant action and counterclaim for restitutionary damages. Their appeal to the Supreme Court from the original three-judge decision was dismissed as moot. National Small Shipments Traffic Conference, Inc. v. Ringsby Truck Lines, Inc., 389 U.S. 576, 88 S.Ct. 689, 19 L.Ed.2d 775.

Because of the contingency provision of the second rate cancellation order, its effectiveness was stayed pending judicial disposition of the controversy. When no party pressed for trial the court, on its own motion, set the case to be heard on December 1, 1971. In a judgment entered March 2, 1972 the three-judge court vacated and set aside the second rate cancellation order and remanded the matter to the ICC for further appropriate proceedings. The issue of the shippers' restitutionary counterclaim was not addressed. Shippers again appealed to the Supreme Court and filed a protective appeal with this court. The ICC has taken no further action on the remand.

The ICC and the United States moved to dismiss the appeal in the Supreme Court for lack of jurisdiction. They contended that once the 1964 rate increase was superseded by the 1967 rates, the rate cancellation order lost all vitality except with respect to the possibility of restitution for charges collected in the interim. They thus argued that while the relief sought and granted was in form injunctive, it was in substantive effect only declaratory and retrospective. The motion to dismiss concluded that the three-judge procedures were not properly invoked, that the matter should have been referred to a single judge, and that the Supreme Court therefore lacked jurisdiction of the direct appeal.

Without articulating its reasons, the Supreme Court dismissed the appeal on October 24, 1972 for lack of jurisdiction, National Small Shipments Traffic Conference, Inc. v. Ringsby Truck Lines, Inc., 409 U.S. 943, 93 S.Ct. 292, 34 L.Ed.2d 215, and the shippers have now pressed their appeal before this court.

■ The motor carriers have challenged our jurisdiction to entertain this appeal. They argue that their complaint below sought injunctive relief against an ICC order under 28 U.S.C. § 1336, that under 28 U.S.C. § 2325 such a complaint can be heard only by a district court composed of three judges, that the case below was properly decided by such a court, and that appeal therefrom lies only to the United States Supreme Court under 28 U.S.C. § 1253. They conclude that under 28 U.S.C. § 1291 courts of appeals are denied jurisdiction where direct review may be had in the United States Supreme Court.

We do not agree with this contention. The proper application of the rule of exclusive review upon which appellees rely necessarily depends upon whether the dispositive issue requires the consideration of a three-judge court, for the Supreme Court will not directly review a judgment of a three-judge court when such court was not required. Pennsylvania Public Utility Comm'n v. Pennsylvania R.R., 382 U.S. 281, 86 S.Ct. 423, 15 L.Ed.2d 324.

The appeal to the United States Supreme Court, brought by the shippers alone, was dismissed without opinion for lack of jurisdiction. In the absence of an articulated reason for this dismissal, we will not presume to engage in a meaningless exercise of reading that Court's mind. It is sufficient to note for our purposes that the appeal could have been dismissed because the Court felt that the three-judge court below was not required.

■ We are convinced that events occurring subsequent to the convening of the statutory three-judge court abrogated the necessity of such a court and that the dismissal of the shippers' appeal to the Supreme Court was justified on this ground alone. We are mindful of the fact that the complaint of the motor carriers as originally filed sought relief from the ICC rate cancellation order in a manner which was in form injunctive. At that time it properly would have been heard before a three-judge court pursuant to 28 U.S.C. §§ 1336, 2325, and 2284. This is so because the complaint was filed at a time in February 1967 when the ICC rate cancellation order was directed at a current rate increase. When the case was finally heard before the three-judge court in 1971, however, that rate increase had been superseded by an August 1967 increase which had, in turn, been superseded by other increases. The necessity for a three-judge court to provide injunctive relief against the three percent rate cancellation order was therefore obviated and determination of the validity of the ICC order was of practical import only as it related to the restitutionary claim of the shippers for charges previously exacted. The ICC order thus became essentially one for the payment of money and was properly reviewable by a one-judge rather than a three-judge district court. Pennsylvania R.R. v. United States, 363 U.S. 202, 80 S.Ct. 1131, 4 L.Ed.2d 1165.

In Middlewest Motor Freight Bureau v. United States, 8 Cir., 433 F.2d 212, cert. den., 402 U.S. 999, 91 S.Ct. 2169, 29 L.Ed.2d 165, closely related factually to the case at bar, a three-judge court below dismissed an action brought by motor carriers for injunctive relief against an ICC rate cancellation order because superseding rate increases had mooted the issue of the cancellation order as between the ICC and the carriers.[1] In our opinion this procedure should have been followed in the case at bar.

---

1. In *Middlewest*, however, the three-judge court had entertained the shippers' counterclaim for restitution and had denied relief on equitable grounds. The appellate court held that while the three-judge court should not have considered the counterclaim because it was not within the statutory purpose of a three-judge court, the failure to dismiss the counterclaim did not invalidate the judgment. It merely rendered direct appeal to the Supreme Court inappropriate and the appeal properly lay before the appropriate court of appeals.

■ The fact that a three-judge court was not required does not automatically render its judgment invalid. It merely constitutes a squandering of judicial energy and the proper procedure is simply to bring the appeal in the appropriate court of appeals. Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643.

■ But the motor carriers maintain that there is a further impediment to our appellate jurisdiction in that the judgment below was not final. While it is true that the three-judge court vacated the ICC order and remanded the case "for such further proceedings as may be appropriate," our refusal to entertain this appeal on grounds of nonfinality would elevate form over substance. Although the court below did not address itself to the issue of the shippers' restitutionary counterclaim, it is clear that any right to restitution is dependent upon the validity of an ICC rate cancellation order which has twice been set aside by a three-judge district court. In fact both parties to this appeal agree that the judgment of the court below is final with respect to the validity of the ICC order. The ICC has taken no further action on the remand (an entirely understandable position in view of the fact that the rate increase which its order sought to cancel has been superseded). Any future action for relief brought by the shippers before a single judge would necessarily be subject to dismissal on grounds that the order upon which the cause of action depends has been vacated. In this important sense, the judgment of the three-judge court below is indisputably final.

■■ The finality requirement of 28 U.S.C. § 1291 is meant to be given a practical rather than technical effect. Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L. Ed. 1528. To deny jurisdiction here would effectively signal the end of appellants' cause of action without any judicial review. We are aware that under normal circumstances a remand to an administrative agency for further proceedings is not a final judgment within the meaning of 28 U.S.C. § 1291. Boston & Maine R.R. v. United States, 358 U.S. 68, 79 S.Ct. 107, 3 L.Ed.2d 34; Pauls v. Secretary of the Air Force, 1 Cir., 457 F.2d 294. But we are unable to apply this rule where, as here, to do so would violate basic judicial principles. "Where the effect of a district court's order, if not reviewed, is the death knell of the action, review should be allowed." Eisen v. Carlisle and Jacquelin, 2 Cir., 370 F.2d 119, 121, cert. den., 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598. The appeal is properly before this court.

■ We now proceed to a consideration of the judgment which vacated and set aside the ICC rate cancellation order and remanded the matter to the Commission for further proceedings. For reasons already discussed, we believe that the three-judge court below was not required and that it should have been dissolved, thereby enabling the shippers to bring their claim for restitution before a single judge. While the judgment below is nevertheless operative, we feel that the very fact that the court below felt that three-judge consideration was required resulted in its disposition of the case in a manner which was not responsive to the real issue in question.

As previously indicated, the sole remaining justiciable controversy when this case was heard in 1971 was the shippers' counterclaim for restitution. What was really at stake was the legality of charges exacted under the three percent rate increase between the time when the first rate cancellation order was scheduled to become effective and the time when the superseding increase became operative.[2] It was during this

2. In Wisconsin v. Federal Power Commission, 373 U.S. 294, 83 S.Ct. 1266, 10 L.Ed.2d 357, rates charged by the Phillips Petroleum Company had been investigated by the FPC.

The Court pointedly addressed the significance of a superseded rate:
An increased rate which is later superseded by a further increase is thus ef-

time that, but for the direct and indirect[3] effect of judicial action, the motor carriers would have been unable to charge the increased rate.

The court below, at the outset of its opinion, properly stated that the crucial issue in determining the validity of the rate cancellation order was whether the ICC had given fair notice of its departure from standards employed in previous years relating to the quantum of evidence which would justify a rate increase. This issue was never resolved, the court concluding that the question of fairness of notice was "a debatable one." The court instead based its judgment on factors which we today hold were non-germane. Construing its role as one of determining the propriety of injunctive relief against an ICC order, the court's primary concern was the length of time which these rates had been in effect.

Now they have been in effect for 6½ years. The presently effective rates are substantially higher. Without going into the multitudinous technical arguments relating to the change in Commission standards and the adequacy of the notice of those changes, we are convinced that there was "a period of uncertainty and room for misunderstanding," Wyoming v. Colorado, 309 U.S. 572, 582, [60 S.Ct. 765, 84 L.Ed. 954] *which makes unfair the 1971 rejection of rates which have been effective since 1964.* (Emphasis added.)

While it is true that the three percent increase has technically been in effect since 1964, in the sense that it has never been finally canceled, in practical import the "effect" of the increase ceased to op-

erate in August 1967 when it was first superseded. The increase is thus not a current, but rather a dated, one whose validity is important only to those who were charged thereon after the first ICC rate cancellation order was scheduled to become operative and before the superseding increase. The crucial issue, therefore, was whether the rate was just and reasonable during that period and proper consideration of the rate cancellation order should have been limited to its validity at the time it was issued. The deliberation of the court below was not so limited and in view of this we cannot let stand a judgment with such preemptive collateral consequences. The shippers are entitled to their day in court.

It is apparent that the court below perceived its function as one of determining a controversy between the ICC and the motor carriers. We have concluded that this controversy was moot and that ripeness existed only in the shippers' restitutionary claim. This claim the court below refused to entertain, and in its capacity as a three-judge court we think that this procedure was proper. This action belongs before a single judge and it may now be so brought. We therefore consider it inappropriate to make an essentially *de novo* determination of the validity of the ICC order in question. Any consideration of other issues raised by both parties relating to the restitutionary claim would be similarly premature.

The judgment of the court below remanding the action to the Commission is vacated and the case is remanded to the district court (one judge) with instructions to entertain appellants' claim.

---

fective only for the limited intervening period, called the "locked-in" period, and retains significance in § 4(e) proceedings only in respect of its refundability if found unlawful. 373 U.S. at 298 n.5, 83 S.Ct. at 1269.

3. The direct judicial effect was the temporary restraining order issued after the first ICC rate cancellation order. The indirect effect was the provision in the second ICC order which allowed for a stay if further judicial action was initiated prior to the order's designated compliance date.